## DENISON et al. v. PHIPPS.

No. 10915—Opinion Filed Nov. 28, 1922.

(Syllabus.)

1. **Appeal and Error — Review — Verdict — Evidence.**

Where a cause is tried without the intervention of a jury, upon controverted questions of fact, and there is evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed on the weight of the evidence, and, when the finding is general it includes all

facts necessary to support the claims of the party in whose favor the judgment is rendered, and upon appeal this court will not review the evidence, if it reasonably tends to support the issues upon which such finding is based, to determine the sufficiency thereof. McCann v. McCann, 24 Okla. 271, 103 Pac. 694; Miller v. Severs, 42 Okla. 378, 141 Pac. 965.

**2. Contracts—Construction—Loans — Place of Completion of Contract.**

Where A., a citizen of Oklahoma. applied to B., of Chicago, by letter for a loan of $4,000, and B., pursuant to the application made by letter transmitted by mail to him at Chicago, sent to A. a note and mortgage to be executed by A. and his wife and by them to be returned to B. at Chicago for his examination and approval; and said note and mortgage were returned to B. at Chicago and approved, and B. sent the amount of the loan by remitting in exchange to A. in Oklahoma, held, that the contract for the loan of the money was completed and delivered in Chicago, and that the transaction took place in Illinois, and not in Oklahoma.

**3. Commerce—Corporations—Foreign Corporations—"Transacting Business."**

Under sections 1335-1338, Rev. Laws 1910, Ann., prescribing conditions under which foreign corporations may transact business in this state, by the phrase "transacting business" is meant the doing or performing of a series of acts which occupies the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure; but the doing of a single act pertaining to a particular business would not be considered carrying on, transacting, or doing business as contemplated in said sections. Fuller v. Allen et al., 46 Okla. 417, 148 Pac. 1008.

**4. Same—Findings—Affirmance.**

Record examined, and held, that the trial court found from the evidence that the Burroughs Land Company, a foreign corporation, in making the loan of $4,000 to the defendants, was not transacting business in Oklahoma in violation of sections 1335 and 1338, Rev. Laws 1910, and that the finding of the court is reasonably supported by the evidence and should be affirmed.

Error from District Court, McCurtain County; Charles G. Watts, Judge.

Action by N. A. Phipps against Benjamin L. Denison and another on note and mortgages. Judgment for plaintiff, and defendants bring error. Affirmed.

J. M. Willis and T. C. Carr, for plaintiffs in error.

McPherren & Cochran and John C. Head, for defendant in error.

### Statement of Facts.

This action was brought by N. A. Phipps, plaintiff, against Benjamin L. Denison and Sue M. Denison, defendants, in the district court of McCurtain county, to recover on a promissory note, executed by the defendants, and to foreclose a mortgage on real estate given by the defendants to secure said note.

The plaintiffs in error were the defendants in the lower court, and will hereinafter be referred to as defendants. The defendant in error was the plaintiff in the lower court, and will hereinafter be referred to as the plaintiff.

On August 1, 1911, the defendants executed a note in the sum of $4,000 in favor of the Burroughs Land Company, a foreign corporation, with its principal office at Cherokee, Iowa, and also a mortgage securing said note on lots 1, 2, and 3, except the east 30 feet, in block 27, in the town of Garvin, Okla., and said note was made payable at the First National Bank of Cherokee, Iowa. The note and the mortgage were sent by mail by the defendants to the office of N. T. Burroughs, 5126 Washington avenue, Chicago, Ill. A short time prior to the time this note became due the plaintiff was at the home of the defendants, and, at the solicitation and request of the defendants, he agreed to purchase said note and give the defendants an additional year or more in which to pay the same. This arrangement, whereby the plaintiff agreed to purchase said note, was consummated shortly after the note became due, and the first interest payment made thereon, the plaintiff giving his personal check to the Burroughs Land Company for $4,000 for said note.

The defendants were erecting a two-story brick building on a portion of the mortgaged premises hereinbefore mentioned, and during the early part of 1911 applied to N. T. Burroughs, who was stopping at the home of the defendants, for a loan of $4,000, which was at that time declined.

After Burroughs returned to his office in Chicago, Ill., the defendants wrote him, again requesting said Burroughs to make the loan, which correspondence continued for some time, and finally the said Burroughs decided to make the loan, and requested the defendants to execute a note and mortgage and secure an abstract and forward the same to his office in Chicago. Upon receipt of this note and mortgage, it was found that only a part of the premises understood to be mortgaged was included. The correspondence was turned over to the secretary of the Burroughs Land Company, with instructions to send the defendants a blank note and mortgage of the Burroughs Land Company, with instructions to execute and return the same, together with certain insur-

ace policies and statement of mechanic's lien, and upon receipt of the same at the office of the said N. T. Burroughs, at Chicago, the loan would be made and the money transmitted by exchange. The defendants executed the note and mortgage, made the assignment of insurance policies, and sent the same by mail to the office of the Burroughs Land Company, or N. T. Burroughs, in Chicago, as indicated in the letter of instructions from the secretary of the Burroughs Land Company. After examination of said papers, the loan was made.

N. T. Burroughs testified that this loan was made by him as an individual, and that the money came from his personal account, and that the Burroughs Land Company at no time had any interest in said note, and that the blank note and mortgage from the Burroughs Land Company were used as a matter of convenience. The Burroughs Land Company was a foreign corporation at the time of the delivery of note and mortgage herein sued upon, and had not complied with the statute authorizing it to do business within the state of Oklahoma, and had not appointed a resident agent upon whom service of process could be had.

The defendants allege and insist that the plaintiff purchased said note after maturity with knowledge of all the facts concerning the same, and was not an innocent purchaser, and that said note is void and cannot be enforced in the courts of this state.

The plaintiff in his reply alleges, in substance:

(1) That this transaction did not occur in the state of Oklahoma.

(a) That if said transaction did occur in the state of Oklahoma, it was an isolated transaction on the part of the Burroughs Land Company without any intention to transact business in the state of Oklahoma, and without any intention of violating the law of the state of Oklahoma requiring foreign corporations to qualify before doing business in the state.

(2) That the loan was made by N. T. Burroughs individually; that the note and mortgage belonged to N. T. Burroughs until it was sold to the plaintiff, and was at no time the property of the Burroughs Land Company.

(3) That the defendants urged and requested the plaintiff to purchase said note and give them additional time in which to pay it, as an accommodation to the defendants, by reason of which representations and requests the plaintiff agreed and thereafter did buy the said note, and give such additional time; that the defendants became and were estopped to interpose any defense against the validity of said note or the right of the plaintiff to enforce the same in the courts of this state.

The case was submitted to the lower court without a jury upon the issues as above stated, and the court made a general finding in favor of the plaintiff, and rendered judgment against the defendants for the amount of said note and accrued interest, and a decree of foreclosure of said mortgage From this action, defendants appeal.

KENNAMER, J. (after stating the facts as above). There are five assignments of error, all of which raise the questions of law involved in the three propositions raised by the plaintiff's allegations as set out in the statement of facts.

The findings of the trial court were general and in favor of the plaintiff. A general finding by the trial court in favor of the plaintiff is equivalent to a finding of each special fact necessary to sustain the judgment rendered, and under the rule followed by this court it will not examine the evidence for the purpose of substituting its judgment for that of the trial court where there is evidence which fairly supports the findings of the trial court. Miller v. Severs, 42 Okla. 378, 141 Pac. 965; Shawnee Life Insurance Co. v. Watkins, 53 Okla. 188, 156 Pac. 181; Gorman v. Garlock, 72 Oklahoma, 179 Pac. 38; Deskins v. Rogers, 72 Oklahoma, 180 Pac. 691; Elwood Oil & Gas Co. v. Gano, 76 Okla. 287, 185 Pac. 443; Barnett v. Barnett, 78 Okla. 249, 189 Pac. 743.

We will first examine the contention made by the defendants that the note in question was given to Burroughs Land Company, a foreign corporation, and at the time said note was executed and delivered to the Burroughs Land Company it had not complied with section 1335, Rev. Laws 1910, providing that no foreign corporation shall transact business within the state until it shall have filed in the office of the Secretary of State a certified copy of its charter or articles of incorporation, and paid the fees required by law, and for failure to comply with section 1336, which provides that every foreign corporation shall appoint an agent, who shall reside at the state capital, upon whom service of process may be made in any action, and that by reason of the failure to comply with the above sections the note sued upon cannot be enforced because of section 1338 of the Rev. Laws of Oklahoma, 1910, which provides:

"If any such foreign corporation shall fail to comply with the foregoing provisions of

this article, all its contracts with citizens of this state entered into after the approval of this article, shall be void as to the corporation, and no court of this state shall enforce the same in favor of the corporation."

And also section 1341, Rev. Laws of Okla. 1910, provides:

"No foreign corporation, as above defined, which shall fail to comply with this article, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort."

It is conceded that the Burroughs Land Company was a foreign corporation and had not complied with the laws of Oklahoma above mentioned, and at the time of the making and delivery of the note sued on was not authorized to, do business in the state of Oklahoma. This brings us to the first proposition—Was the contract resulting in the note sued on in this case made in Oklahoma or Chicago?

The transaction in reference to the loan made in this case was carried on by mail. The defendants wrote to N. T. Burroughs in Chicago, offering to make a note and give a mortgage on certain real estate for a loan of $4,000 for a period of one year. A note and mortgage was executed and sent to the Burroughs Land Company in Chicago, which was rejected and returned to the defendant with instructions to make another note and mortgage on blanks enclosed, and to assign certain insurance policies, and statement that there were no mechanics' liens on the property, and upon the return or delivery of the note and mortgage and other papers to its office, in Chicago, it would then make the loan, but in the meantime if the defendants could secure the loan from any other source or other parties, the Burroughs Land Company would prefer not to make the loan. The note and mortgage and other papers were prepared and sent to the office of N. T. Burroughs, at Chicago, and after an examination of the same they were accepted and $4,000 in exchange was forwarded to the defendants. Under the above statement of facts, the lower court was warranted, as a matter of law, in finding that the contract was made in Chicago. The general rule is that a contract is made where the title to the thing or property involved passes to the vendee. Or, in other words, the general rule, where negotiations looking to the making of a contract are entered into by correspondence between persons living at a distance from each other, the contract is deemed to be made at the place where the final assent is given. 23 R. C. L., sec. 69; Josey v. State, 88 Ark. 269, 114 S. W. 216, 44 L. R.

A. (N. S.) 463; Ward Lumber Co. v. American Lumber Co., 247 Pa. 267, 93 Atl. 470, 64 L. R. A. 824, and many other cases.

In the case at bar, the defendants executed the not sued upon in Oklahoma, and sent it to Chicago by mail, which was, in due course, to be examined by the Burroughs Land Company, to be determined whether or not the note, mortgage, and other papers complied with the requirements. Hence, the final necessary assent and transaction by which the title of the property passed from the defendants to the Burroughs Land Company took place in the city of Chicago. Ordinarily one who first uses the post office in the consummation of a contract adopts the same as his agent, and it continues the agent of the party first using it, unless the circumstances or specific instructions of the other party reveal the contrary. For instance: Where an offer is made by one party through the post office with instructions in the offer to accept the same by return mail, when the acceptance is mailed it becomes binding on the party making the offer. In that case, the party making the offer has by express language made the post office his agent, and when the proposition is accepted by delivering a letter to the post office, it is the same in law as delivering it to the party or his agent who made the offer.

If a purchaser at Oklahoma City orders goods from St. Louis, and the order is accepted by the seller in St. Louis, and the goods delivered to a common carrier, the contract is made in St. Louis, and the title passes to the purchaser in St. Louis. But, if the purchaser at Oklahoma City orders goods from St. Louis to be shipped to Oklahoma City upon approval, and the goods are received at Oklahoma City by the purchaser, and the purchaser upon approval accepts the same, the contract of sale is made in Oklahoma City, and the title passes in Oklahoma City.

In the case at bar, the defendants were not obligated in any way to send the notes, mortgages, and other papers to the Burroughs Land Company, but, upon the other hand, were told to secure the loan from other parties, if possible; and the deposit of the note and mortgage in the post office in Oklahoma was not a delivery of the note and mortgage to the Burroughs Land Company, because of two contingencies:

(1) It was necessary for the Burroughs Land Company to receive the note and mortgage, and other papers, in Chicago, and examine the same before the minds of the parties met to consummate the contract.

Title could not pass to the Burroughs Land Company until it had paid the consideration for the note, which was paid after the same was delivered in Chicago, and, hence, the last transaction to pass title to the property took place in Chicago.

(2) The second contingency was that the defendants were under no legal obligation at the time the note and mortgage were delivered to the post office in Oklahoma to take the loan or to deliver the instruments to the Burroughs Land Company, but the same was a voluntary act upon their part, and the note and mortgage did not pass out of the irrevocable control of the defendants until they were delivered to the Burroughs Land Company, in Chicago.

In 9 Cyc. 296, subsection G, it reads as follows:

"It follows that if an offer be sent by letter through the post, although by the regulations of the office, the sender may not be able to recall his letter, yet he may by other means if possible withdraw the offer before it is accepted, as by a second letter sent by the same post and delivered at the same time with the first letter."

Subsection H, page 297, supra, is as follows:

"In the English cases it is always assumed that the letter on being posted is beyond the control of the sender—that it becomes the property of the addressee as soon as it is put into the mail. Within a few years the regulations of the United States post office have been altered and the writer or sender may apply for a letter he has put in the mail, and when properly identified the postmaster must return it to him or telegraph to the office of the addressee, whose postmaster must return it to the mailing postmaster, if it has not been delivered. The question then will arise, whether a change in the regulations of the post office can affect the law that the acceptance is final when the letter is dropped in the post office. It seems that it does."

Hence, under the postal rules of the United States, the postmaster at the home office may secure the return of any letter or document in the post office not delivered to the addressee.

This case, measured by any or all of the rules of determining the place where the contract is made, clearly shows that the same was made in Chicago.

Section 149, 8 C. J., p. 89, states the universal rules as follows:

"The delivery of the instrument is its completion, and the place of delivery is in general the place of contract. Thus, where an instrument is signed in one state and de-livered in another, the law of the latter governs, since the contract is made in the latter state. The place of delivery need not appear on the face of the note or bill, and the actual place of delivery will control the apparent place shown by the date, unless a contrary intent appears, except in the case of a bona fide holder for value, as already stated."

In U. S. Savings & Loan Co. v. Shane, 77 N. W. 1006, the Supreme Court of North Dakota said:

"Where a foreign building and loan association advanced money to a member of said association resident in this state, who received the same and executed a note for the amount, and a mortgage upon real estate to secure the same, such note and mortgage can be enforced in the courts of this state, notwithstanding the fact that said association had not complied with the statutes prescribing the terms upon which foreign corporations might do business in this jurisdiction." See Caesar et al., v. Capell et al., 83 Fed. 403.

Section 3990, 14 A, C. J., p. 1281, announces the following rule:

"A foreign corporation is not doing, transacting, carrying on, or engaging in business in a state within the meaning of the statutes under consideration, by entering into contracts with residents thereof, where such contracts are made and are to be performed elsewhere. This rule is not altered by the fact that such contracts relate to property situated within the domestic state."

Section 3991, 14A, C. J., p. 1283, is as follows:

"On the principle stated in the preceding section, it has been held that a foreign corporation is not doing, transacting, carrying on, or engaging in business in a state by making loans outside the state to residents thereof, on applications obtained by agents of the corporation acting within the state, where the application is transmitted to the foreign corporation at a point outside the state for acceptance or rejection, and the loan is made payable outside the domestic state, or where such a loan is made upon acceptance outside of the state of an application received without the intervention, for the purpose of transmission, of an agent of the corporation acting within the state." Martin v. Bankers Trust Co. (Ariz.) 150 Pac. 87; Norton v. Union Bank & Trust Co., (Tenn.) 46 S. W. 544; Brown et al. v. Guaranty Savings Loan & Investment Co. (Tex.) 102 S. W. 138; Scruggs v. Scottish-American Mortgage Co. et al. (Ark.) 168 S. W. 563.

The statutes requiring foreign corporations to qualify before doing business in Oklahoma were passed for the purpose of requiring foreign corporations to put themselves in a position in the transaction of

business in this state whereby citizens of this state could bring actions against them, and thereby declared a public policy of the state; and where it is shown by the facts and circumstances in a case that a foreign corporation is transacting any business in this state, directly or indirectly, for the purpose of evading the statute, its contract should not be enforced. In this case, it is shown that the Burroughs Land Company in fact did not want to make the loan and was not trying to evade the law. Hence, the general rules for determining where contracts were made or business transacted should be applied, and when so applied to the facts in this case, the irresistible conclusion is that this was a contract made outside of the state, regardless of whether the same was made with the Burroughs Land Company or N. T. Burroughs.

This court is committed to the rule that the law of the place where a contract is to be performed is the law which governs in determining its validity. Security Trust & Savings Bank of Charles City, Iowa, v. Gleichmann, 50 Okla. 441, 150 Pac. 908. Many authorities are cited in the opinion in this case supporting this rule. It is, therefore, clear that in determining the validity of the note upon which the plaintiff recovered in this action the trial court was justified in concluding that the note was valid contract under the laws of the state of Iowa, the note being payable at Cherokee, Iowa, the presumption being that the parties in executing the note acted within the law.

It appears that the weight of the authorities is to the effect that single and isolated transactions do not ordinarily constitute the "doing of business" or "transaction of business" as contemplated by the statutes prohibiting foreign corporations from transacting business within a state without having complied with the law of the state. Home Lbr. Co. v. Hopkins, (Kan.), 190 Pac. 601; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Ammons v. Brunswick-Balke-Collender Co., 141 Fed. 570.

This court in the case of Fuller v. Allen, 46 Okla. 417, 148 Pac. 1008, held:

"The question now presented is, What is meant by transacting business? The best definition we can think of for this phrase is the doing or performing a series of acts which occupy the time, attention, and labor of men for the purpose of livelihood, profit, or pleasure. It is well settled upon authority that the doing of a single act pertaining to a particular business or transaction will not be considered carrying on, transacting, or doing business. The mere term itself implies more than one transaction.

" 'The doing of a single act of business in another state does not constitute the doing of business within the meaning of foreign corporation laws'."

In view of the foregoing, it is unnecessary to discuss the other contentions in this case at length, and especially as to whether this was an isolated transaction by the Burroughs Land Company without any intention of doing business in the state, or whether the loan was actually made to N. T. Burroughs.

The court was fully warranted in finding from the testimony the contract resulting in the loan of the $4,000 was made in Chicago, and there being evidence reasonably supporting the finding, which was in effect a finding that the Burroughs Land Company was not transacting business in Oklahoma, it will not be disturbed. The judgment is affirmed.

HARRISON, C. J., and KANE, JOHNSON, MILLER, and NICHOLSON, JJ., concur.