GENERAL ELECTRIC COMPANY and
Electric Mutual Insurance Company,
Petitioners,

v.

Marilyn Jane FOLSOM and Marilyn Jane
Folsom, Guardian of Patricia Louise Fol-
som and Diane Lynn Folsom, and the State
Industrial Commission of the State of
Oklahoma, Respondents.

No. 38062.

Supreme Court of Oklahoma.

Nov. 25, 1958.

Clayton B. Pierce, John R. Couch, Oklahoma City, for petitioners.

Gene Stipe, Stipe, Gossett & Stipe, McAlester, Mac Q. Williamson, Atty. Gen., for respondents.

BLACKBIRD, Justice.

Marilyn Jane Folsom, hereinafter called claimant, is the widow of William Robert Folsom, hereinafter called employee. He was killed in an automobile accident at Tatum, New Mexico, on November 29, 1956, while in the employ of General Electric Company, employer. An award was entered for the maximum amount under the Death Benefit Provisions of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq. and S.L.1955, page 485, 85 O.S.1957 Supp. § 4, allowing recovery for extraterritorial accidental injury. This proceeding is brought by the employer and its insurance carrier, Electric Mutual Insurance Company, hereinafter usually called petitioners, to review the award.

Petitioners' Propositions II and III concern the Commission's alleged lack of jurisdiction over the case, while their Proposition I is to the effect that, as to jurisdictional questions, this court does not accept as conclusive the Commission's findings of fact, but weighs the evidence and makes its own independent findings. As claimant takes no issue with the latter proposition, we will consider its correctness as conceded and deal only with Propositions II and III.

■ The reason petitioners give in Proposition III for the Commission's alleged lack of jurisdiction is their claim that the place, or situs, of Folsom's employment was Fort Wayne, Indiana, instead of Oklahoma. It seems to be conceded that this is governed by the place where his contract of employment was entered into. According to the undisputed evidence, Folsom was first offered the employment by a letter dated May 17, 1950, from the employer's Schenectady, New York, office, addressed to, and received by, him at Norman, Oklahoma, a few days before his graduation from the University there. Inclosed with the letter was a formal application blank, an "Outline of Employment Procedure * * *", and what is referred to in petitioners' brief as a "brochure" entitled: "General Information Regarding Test Engineering Program." The letter stated that the application form, "when completed and returned to us, will be considered as your acceptance of our offer * * *". Apparently, Folsom filled out the application blank and sent it to the employer's personnel office in Schenectady, inclosed in a letter dated May 28, 1950, which began: "Here is my acceptance of your offer to join your Test Engineering Program." Claimant contends this evidence was sufficient to support the Commission's specific finding that Folsom's employment contract "was entered into in Oklahoma." In support of petitioners' contention that Folsom was not employed until after he left Oklahoma and reported for work on the first job to which the employer assigned him at Fort Wayne, Indiana, they cite certain portions of the above-mentioned "Outline" and "brochure". The portion of the "brochure" is in words and figures as follows:

"7. What is the General Electric policy on transportation expenses.

"The Company does not reimburse men reporting to a factory for their first Test assignment. * * *"

Pertinent portions of the "Outline" are as follows:

"1. Enclosed is an application blank which you may fill out and return as your acceptance of our offer of employment. Since this offer is contingent upon your being able to meet our physical requirements, it is important that you describe in detail on the application blank any abnormal conditions in vision, speech, hearing, heart or other

physical limitations. Also, if you will indicate the date on which you will be able to report for work, instructions will be sent you concerning the definite time and place of reporting for your initial assignment.

\* \* \* \* \* \*

"4. When you report for work, it will be necessary for you to:

"a. Pass a physical examination given by our Company doctor. \* \*."

After the employer had received his aforementioned letter, dated May 28, 1950, Folsom received from it the following letter at Ardmore, Oklahoma, which, according to the undisputed evidence, was the location of his permanent residence while attending the University and before he ever departed from Oklahoma:

"We were indeed pleased to receive your acceptance of the Test offer of employment recently extended you by Mr. Roberts, of this Division. For your initial assignment we would like you to report for work to Mr. W. E. Holmes, of our Fort Wayne Works on Monday, June 19th, approximately 8:30 A.M. The plant is located at 1635 Broadway, Fort Wayne, Indiana.

"Upon arriving at Mr. Holmes' office, information will be available relative to your securing living quarters. If you would like to arrange for temporary hotel accommodations prior to your reporting date, however, we suggest you contact the Hotel Keenan or Hotel Indiana.

"I am enclosing a brief write-up giving directions to the Fort Wayne Plant and other pertinent information. I am sure it will prove helpful to you at the time of reporting.

"Please feel free to contact this office if there are any questions regarding the above instructions for your first assignment as a Test Engineer. Unless we hear otherwise, we shall assume you will report for work as scheduled."

From the controlling parts of the above-described evidence, we think there can be no question but that, as a matter of fact and law, it was the intention of both Folsom and his employer that his contract of employment come into being in Oklahoma, and that is the State where it was entered into. In this connection, see Farmers Produce Co. v. McAlester Storage & Commission Co., 48 Okl. 488, 150 P. 483, L.R.A.1916 A, 1297, and C. H. Parker Co. v. Exeter Ref. Co., 26 Cal.App.2d 610, 79 P.2d 1114. See also cases digested in 4 Okl.Dig., "Contracts", As said in Consolidated Fuel v. Gunn, 89 Okl. 73, 213 P. 750, 751 (quoted in Clem Oil Co. v. Oliver, 106 Okl. 22, 232 P. 942, 943):

"The general rule is that a contract is deemed to be made at the place where the final assent is given."

When Folsom's letter accepting General Electric Company's offer was mailed at Norman, as above shown, the contract of employment was then created and became binding on said company, contingent only upon his being able to meet its physical requirements. In this connection, see Denison v. Phipps, 87 Okl. 299, 211 P. 83, 85. When he thereafter met these requirements, even though he did not take, and pass, the company's physical examination until after his arrival in Indiana, the location of his first job assignment, the effective date of his employment related back to, and was coincident with, his acceptance in Oklahoma of said company's offer. The contract involved here is clearly distinguishable from the one involved in Consolidated Flour Mills Co. v. File Bros. W. Co., 10 Cir., 110 F.2d 926, where the trial court erroneously ruled that the contract there involved was made in Oklahoma, but the appellate court held that it was made in Kansas.

 The additional ground for the Commission's not having jurisdiction to make the award involved herein, according to petitioners' argument under their Proposition II, is that the accident occurred in New Mexico. (After Folsom's report for

work and training at: Ft. Wayne, Indiana, his employer brought him to Schenectady, New York. From thence he was transferred, as field engineer, to its southwest division, whose offices are in Dallas, Texas. Thereafter, he performed a job assignment at Elk City, Oklahoma, immediately before being given the one at Tatum, New Mexico, where he and his wife had their lodging in a trailer on the date of his death, though their permanent residence was at Ardmore.) They say that assuming that the contract of employment was made in Oklahoma (as we have just determined), since this occurred in 1950, and the "extraterritorial" amendment (Tit. 85 O.S.1957 Supp. § 4) to this State's Workmen's Compensation Law was not enacted, nor effective, until during the year 1955, it was not applicable to this case. This argument is based on the premise that the employer's liability for the employee's injury is, by the terms of said amendment, dependent upon the contract of employment; and they say that to apply the amendment to the contract in this case would be giving it a retroactive effect in violation of the "contract-impairment" provisions of the Constitutions of this State and of the United States. Const. art. 2, § 15; Const.U.S. art. 1, § 10. There is no merit in this argument. The short answer to it is that the employer's liability "burden" for death benefits, they refer to, does not accrue simply by reason of the making of the contract. Nor are the party's rights and duties with reference thereto governed by that event. Compensation for accidental injury under the Workmen's Compensation Law has always been determined by the provisions of the law in force and effect *at the time of the injury*. Washabaugh v. Bartlett Collins Glass Co., 177 Okl. 159, 57 P.2d 1162; United Iron Works v. Smethers, 159 Okl. 105, 14 P.2d 380. There is no different criterion for such compensation in the form of death benefits. The date of the accidental injury in this case was subsequent to the effective dates of both the death benefits provision (Tit. 85 O.S.1951 § 1 et seq.) and the extraterritorial provisions of our Workmen's Compensation Law. Accordingly, both were applicable to this case. In view of our conclusions herein that petitioners' arguments have presented no ground for vacating the award, it is hereby sustained.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS and JACKSON, JJ., concur.

CARLILE, J., concurs in result.