SKILSTAF/STAFCO, INC., Petitioner,

v.

Linda BURCKHALTER and The
Workers' Compensation Court,
Respondents.

No. 87596.

Court of Civil Appeals of Oklahoma,
Division 3.

Dec. 20, 1996.

Rehearing Denied Jan. 30, 1997.

T. Shane Curtin, Oklahoma City, for Petitioner.

Roger B. Hale, Philip D. Ryan, Boettcher, Ryan & Martin, Oklahoma City, for Respondents.

### MEMORANDUM OPINION

GARRETT, Judge:

Respondent, Linda Burckhalter (Claimant), filed her Form 3 in the Workers' Compensation Court on October 19, 1995, alleging she sustained an accidental injury arising out of and in the course of her employment as a truck driver for B.J. Handley. She injured her back while picking up a chain box. She alleged the employment agreement was made in Oklahoma, but the place of injury was in the State of Washington. She amended her Form 3 on November 7, 1995, to change the name of her Employer to Skilstaf, Inc. (Employer). Later, B.J. Handley was "considered" dismissed without prejudice. Employer denied jurisdiction and requested a hearing. Skilstaf, Inc. and B.J. Handley's trucking company are separate Alabama companies and have home offices in that State. Jerry Handley is B.J. Handley's son and works at the trucking company.

The trial court conducted a hearing and entered its order in which, as pertinent here, the court found that the employment contract was made in Oklahoma, and it had jurisdiction. Employer appealed to the court *en banc.* The three judge panel found the trial court's order was not against the clear weight of the evidence or contrary to law and affirmed. This review proceeding followed. The only issue is whether the employment contract was made in Oklahoma, and whether the Oklahoma court has jurisdiction.

Employer contends the employment contract was entered into in the State of Alabama. Employer also contends Claimant failed to sustain her burden of proof that the contract was made in Oklahoma. Claimant contends the contract was made in Oklahoma, and the evidence so shows. She also

claims the clause in the written contract, that it was made in Alabama and was subject to Alabama's workers' compensation laws, is void and unenforceable in Oklahoma because of the provisions of 85 O.S.1991 § 47.[1]

Claimant testified the truck driver job was advertised in an Oklahoma City newspaper. She called the toll free number listed in the ad from her home in Elk City, Oklahoma. She knew or learned the number she called was an Alabama number. She spoke to Jerry Handley at the trucking company. He told her about the requirements for the job, which included a "doubles endorsement", which "gives you the driver's license to pull two trailers consecutively" with one tractor. Handley told her he would put her with someone to train her to handle the doubles if she got the job. He agreed to send her an application, and did so. She went to the driver's license bureau at the police department in Elk City, took a test and got the endorsement. She completed the application Handley sent her and returned it to him with the endorsement and a copy of the driver's license containing the doubles endorsement. She also sent him a drug screen which was done at a hospital in Elk City.

She did not go to Alabama. She said Jerry Handley hired her by telephone during a subsequent telephone conversation. She was at her home in Elk City at the time. She said he told her: "We've got everything covered, we'll have a driver through there in a few days to pick you up." He sent "the paperwork packet" which included an "agreement"[2] and other items requiring her signature. She said she signed at her residence in Elk City and mailed the packet back in whatever envelope he had furnished. Wayne Stark signed the employment agreement for Employer. She had no idea where or when

he signed it. However, it was not signed by Stark when she mailed it back. Employer offered the agreement into evidence. Claimant objected. It was admitted in evidence for whatever it was worth. The trial court apparently reasoned that the only testimony at the trial about the agreement was from Claimant,[3] stating she signed it in Elk City, and she knows nothing beyond that as to when or where Stark, who was not present at the trial, signed it. Stark is the owner of Skilstaf. Claimant said she started working when she was picked up in Elk City on September 16, 1994, in a truck driven by a driver for Handley, who was to be her partner. She injured her lower back in June, 1995. She worked only until September 1995, because the pain became unbearable.

■ Where an employer in another State makes an offer of employment, and the prospective employee accepts the offer in Oklahoma, the contract of employment may be held to have been entered into in Oklahoma. Cf. *Driver Management, Inc. v. Miller,* 908 P.2d 815, 818 (Okl.App.1995), citing *General Electric Co. v. Folsom,* 332 P.2d 950 (Okl. 1958). In *Miller,* a company representative of an Arkansas employer contacted a prospective employee by telephone and offered a job to the employee at his Oklahoma home. The employee accepted the job and agreed to go to Arkansas to complete the details. The *Miller* court held the employment contract did not arise in Oklahoma because the representative did not have authority to hire the employee.

In *Garrison v. Bechtel Corp.,* 889 P.2d 273, 281 (Okl.1995), the Supreme Court stated:

Every contract results from an offer and acceptance. An offer becomes a binding promise and results in a contract only when it is accepted. To constitute accep-

---

1. Section 47 provides:

   No agreement by an employee to waive his right to compensation under this act shall be valid.

2. She said the agreement, entered into evidence as Respondent's Exhibit 1, was unsigned when she received it. The agreement recites the parties agree the employment contract was formed in Alabama and requires her to use Alabama law as her remedy for worker's compensation, "regardless of where the employee resides, where

the accident, injury, disease or death occurs, within what state or states the work is performed, or within what state the Employee was recruited for employment." It also provides that she understands she is agreeing to accept Alabama's worker compensation benefits "and waiving his or her rights to benefits possibly available from another state...."

3. We do not so view the evidence. See the references to the testimony of Greg Fields, infra.

tance, there must be an expression of the intent to accept the offer, by word, sign, writing or act, communicated or delivered to the person making the offer or the offeror's agent. *Generally, a contract is deemed to have been made where the final assent to the offer is given.* The place where the contract is made is the controlling issue. (Emphasis added) (Footnotes omitted).

To establish that an employment contract was entered into within Oklahoma, the employee must prove that an employment offer was made by the employer or its agent and that it was accepted by the employee in Oklahoma....

In *Cherokee Lines, Inc. v. Bailey*, 859 P.2d 1106, 1110 (Okl.1993) our Supreme Court said:

Although the Workers' Compensation Act is to be construed liberally in favor of workers it is intended to benefit, Bailey must be held to strict proof that he was an employee of Cherokee Lines in order to be covered by the provisions of the Act. *Beall [v. Altus Public School Dist.]*, 632 P.2d [400] at 403 [ (Okla.1981) ]. An employer-employee relationship "is created by contract, either express or implied, or by the unequivocal acts of the parties recognizing the relationship." *Id.*, at 402 (quoting *Landrum v. Ownby*, 290 P.2d 400 (Okla.1955). Under 85 O.S.1981, § 4, the Workers' Compensation Court does not have jurisdiction to hear a workers' compensation claim for injuries sustained outside of the State of Oklahoma unless his contract of employment was entered into within the state. *Chapman v. Union Equity Cooperative Exchange*, 451 P.2d 3 (Okla.1969); *Hartford Ins. Group v. McDaniel*, 526 P.2d 941 (Okla.1974). Generally, "a contract is deemed to have been made where the final assent is given." *Chapman*, 451 P.2d at 5. *See also Armstrong v. Guy H. James Construction Co.*, 402 P.2d 275 (Okla.1965).

Employer presented Greg Fields as a witness. He works for Skilstaf, Inc. and is its director of sales and marketing. His testimony was undisputed and included the following questions and answers.

Q   Would you tell the Court what Skilstaf does and their relationship to B.J. Handley.

A   Skilstaf is an employee leasing company in the State of Alabama. And what an employee leasing company is, is we go out to small and medium side companies and they sign a contract with us. And what we do is we start doing their payroll. And in doing that, the employees of the client company become employees of Skilstaf.

And what we do is then we lease the employees back to the client company. In doing that, the employees of the client company fall under our work comp insurance, they fall under our health insurance benefits, they fall into our 401–K plan, you know, Christmas club plan, the whole human resources package that comes with that.

Q   So they—are they employees of Skilstaf or are they employees of B.J. Handley?

A   They are sole employees of Skilstaf.

.     .     .     .     .

Q   —who then is responsible for the hiring and firing of the employees of Skilstaf?

A   Skilstaf is solely responsible for the hiring and firing of all employees.

Q   Can you advise the Court, then, as to how Ms. Burckhalter was contacted for potential employment?

A   B.J. Handley Trucking, a client company, placed an ad in the Oklahoma newspaper, Ms. Burckhalter apparently had responded to the ad. And in doing so, she called a 1–800 number and talked to a person at B.J. Handley Trucking. I have come to find out this person was Jerry Handley.

.     .     .     .     .

Q   With the relationship between your company, Skilstaf, Incorporated and B.J. Handley, does anyone on behalf of B.J. Handley have the authority to hire for Skilstaf?

A   They do not have the authority to hire, but what we do is in our contract, we

designate on-site supervisors who can recruit and send to us the information, such as the—you know, they tell us who they want to hire. And then once the appropriate paperwork comes to our office, we give them approval to hire the people or we do the hiring on-site at Skilstaf.

Q And Skilstaf is located where, sir?

A In Alexander City, Alabama.

Q And you know Mr. Stark, Mr. Wayne Stark?

A Mr. Wayne Stark, yes.

Q Who is Mr. Wayne Stark?

A He is the owner and president of Skilstaf.

Q And you are familiar with the policy and procedures documents signed prior to—preemployment documents?

A Yes, very.

. . . . .

Q I want to hand you what is marked Respondent's 1, Exhibit No. 1 to this trial. And you recognize that?

A Yes, I do.

Q And can you tell the Court what that is?

A This is an employment agreement. This particular agreement here is one that is signed by all truck drivers. We have a number of trucking companies that are client companies. And this agreement is to be signed by every truck driver before they are hired.

Q And that is the standard operating procedure for Skilstaf?

A Yes, it is.

Q And can you tell this Court in just a little greater detail the procedure as far as what is done with this document when it's received and then what's ultimately done with the document.

A What we do, our client company is if they have an applicant that they are wanting to hire, they send them a packet of paperwork, which includes this agreement. Also it includes a leasing agreement. Also it includes a W–4, then the state tax form. And it also includes an

I–9, which is a verification of citizenship in the U.S.

And then what's done is the applicant signs the paperwork, fills it out, gets the appropriate identification for the I–9 form. It is sent back to our office. And then once we see that we have all of the information we need to put them on payroll, then we give the approval to go ahead and hire the employee.

Q And all the paperwork is processed in Alexander city?

A Correct.

Q Any reason to believe that this was done any differently than normal operating procedures?

A No. We do not deviate from operating procedure on that.

While he was testifying, Fields was handed the document which had been identified as Claimant's employment agreement. He knows Wayne Stark and his signature. He identified the signature on the contract as being that of Wayne Stark, president of Skilstaf, Inc. While Fields did not see anyone sign the agreement, just above the "Wayne Stark" signature appears the following: "SIGNED AT *Alex City, AL* ". There was no evidence that this recital did not speak the truth.

Under the undisputed evidence, Jerry Handley did not have authority to hire Claimant. Thus, the place of his act [whether done in Oklahoma, Alabama, or elsewhere] could not be deemed to be "where the final assent [was] given". Employer's policy required a written contract for all truck drivers. Contracts were not approved and executed at any place other than their office in Alexander City, Alabama, and they were not approved until the "appropriate paperwork" came to that office. The evidence in this case strongly indicates the "final assent" was accomplished when the employment contract was signed by Wayne Stark at Alexander City, Alabama; and, the record contains no evidence to the contrary. The burden of proof was on the Claimant. If evidence existed that Employer gave its "final assent" in the State of Oklahoma, it was not presented at the hearing.

We hold that the trial court and the *Court En Banc* incorrectly held that the Oklahoma court has jurisdiction of this matter, and the order must be vacated. It becomes unnecessary to reach or decide any issue relating to the validity of the agreement which required workers' compensation claims to be filed in Alabama, and to be controlled by its laws.

ORDER VACATED.

JONES, P.J. and ADAMS, V.C.J., concur.

