1998 OK CIV APP 10

1998 OK CIV APP 10

**Johnnie K. ALEXANDER, Petitioner,**

v.

**TRANSPORT DISTRIBUTION COMPANY and Credit General Insurance Company, Respondents.**

No. 88774.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 7, 1997.

Certiorari Denied Jan. 27, 1998.

---

Sam Townley, Oklahoma City, for Petitioner.

H.A. Bud Carter, Oklahoma City, for Respondents.

## MEMORANDUM OPINION

GOODMAN, Presiding Judge.

This is an original proceeding to review an order of the Workers' Compensation Court finding it lacked jurisdiction over the claim. Based upon our review of the record and applicable law, we sustain the order in part, vacate it in part, and remand with directions.

### I

Claimant Johnnie K. Alexander filed her Form 3 June 7, 1996, alleging she injured her back, both hip joints, her right knee and ankle, and her kidneys and bladder when she fell approximately 13 feet "off load of lumber on flatbed trailer to ground while taking tarp off to unload" during the course of her employment as a cross-country driver for employer Transport Distribution Company (TDC). She sought temporary total disability benefits and continuing medical treatment.

The employer argued that, although the claimant is a resident of Oklahoma, they had hired her in Missouri and she had been injured in Arkansas, therefore the court lacked jurisdiction to proceed.

The trial court held a hearing on the matter December 19, 1996. The claimant testified she had married a TDC truck driver who "really liked the company because he was allowed weekends at home." TDC is a cross-country motor carrier with terminals in Oklahoma City, Kansas City, Joplin, Missouri, and Granite City, Illinois. The largest terminal is in Joplin. In May 1995, the claimant went to the Oklahoma City terminal and talked to the terminal manager about employment with TDC. The manager told her the job requirements. He also suggested that, because the claimant's experience had been hauling enclosed cargo and the TDC job involved hauling open flatbed trailers, she ride along with her husband for a week. Before the trip, TDC sent the claimant to a physician for a physical examination and required drug screening.

The claimant and her husband left Oklahoma City Monday, May 8, 1995, heading for the Granite City terminal. The claimant said she shared driving duty and "learned how to tarp and untarp loads, throw straps and operate chains and binders for the steel." When they arrived at Granite City, the terminal manager gave the claimant a job application packet, and the claimant had her "school diploma and work record faxed to the office there in Granite City, Illinois." She said "[d]uring the following week, I filled out all the applications [and] TDC ran an MVR—Motor Vehicle Record—did a DAC report which tells about my trucking ... experience."

The claimant returned to the Oklahoma City terminal Friday, May 12, "turned in my application—it was sent directly to Joplin Friday afternoon." She talked in person to the Oklahoma City terminal manager, and by phone to the TDC safety officer at the Joplin terminal, to whom the other information regarding the claimant had been forwarded. She said the application packet was approximately 40 pages, consisting of "about three and a half pages of actual application, it had a log test where you had to be able to fill out a log legally, it had all of your work record ... a hundred question written test [and] information about the company and benefits...." Included among the items forwarded to Joplin were a Certification of Road Test, and a Certification of Written Examination on which the claimant said she had filled in her name and Operator's License number. The date and "Signature of examiner" were blank when she submitted them.

During the telephone conversation with the TDC safety officer in Joplin, the claimant

said he told her she "needed to be able to be in Joplin on Monday—he would have [her husband] drop me off there—I needed to be able to bring everything that I would need to be able to go out on the truck." The claimant "said, 'Oh, so I have a job?' He said, 'Of course, you have a job.'"

The employer authorized the claimant's husband to transport her to the Joplin terminal Monday, May 15, 1995. Once there, she "was acquainted with company policies" and watched safety films. She testified:

> One of the things that [the safety officer] had informed me is that they were buying Freightliners with a new type of transmission called a Super 10 and *I requested that I be allowed to drive a truck that had a Super 10* transmission and he and I went for a ride in a Super 10 transmission. (Emphasis added.)

The claimant said the employer did not give her a road test, and the drive with the safety officer was simply him "actually making sure that I was aware of how to drive a Super 10 transmission."

Thereafter, the claimant left on her first haul to Chicago. The date of her departure from Joplin is not clear from the record before us. The claimant was injured in Arkansas September 26, 1995. She resigned from TDC April 12, 1996, and filed her Form 3 June 7, 1996. TDC's insurer began paying the claimant unspecified benefits under Missouri law. The claimant said she had not filed a workers' compensation claim in Missouri.

The employer had filed a Form 10 November 15, 1996, listing the witness it would present regarding "[h]iring procedures; representatives of [employer] who hire [sic] claimant" in support of its argument that the claimant had been hired in Missouri. However, on the date of trial, the employer did not produce the testimony of the listed witness, and made an oral request for additional time to present a different witness. The claimant objected, claiming the employer had not timely amended its Form 10 and has "waived that right ... and is not entitled to ... put on further evidence." The court

took the request under advisement stating "I'm not really convinced that we really need further evidence at this point in time, but I'm going to reflect on this and make it a part of my Order."

The trial court filed its order January 7, 1997, finding it lacked jurisdiction over the claim. The court found, in relevant part:

—1—

That [the employer's] request to permit Ben Clark to supplement the record by deposition testimony is denied.

—2—

That claimant has received som [sic] Workers' Compensation Benefits under the laws of Missouri.

—3—

That the claimant's contract of employment was entered into in the State of Missouri. Although much of the job application process was conducted in Oklahoma City, the Court finds that *final assent to employment did not occur until claimant successfully completed the road test in Joplin, Missouri* (See First Page of Respondent's Exhibit # 1). Claimant was not placed on the company payroll or provided a company truck until after the successful completion of the road test. *See also* Claimant's Exhibit # 1.

—4—

That the Court finds the claimant's alleged injury occurred in the State of Arkansas.

—5—

That based on the findings, the Court has no jurisdiction over this claim. (Emphasis added.)

The claimant seeks our review.[1]

## II

■ The claimant contends the trial court erred as a matter of fact and law in its

---

1. The employer's motion to dismiss this review proceeding alleges an absence of substantive merit in the claimant's appellate argument, but does not state a recognized ground for dismissal. *See* Okla.Sup.Ct.R. 1.6(c)(1), 12 O.S. Supp. 1997, ch. 15, app. 1 (West). Accordingly, the motion is denied.

conclusion that "final assent" to the contract of employment occurred in Missouri. We agree.

■■■ The issue of whether the parties entered into an employment contract while the claimant was in Oklahoma presents a jurisdictional question we must decide independently based upon a *de novo* review of the record to determine whether an employee-employer relationship existed within the state. *Garrison v. Bechtel Corp.*, 1995 OK 2, 889 P.2d 273. A "contract is deemed to have been made where the *final assent* to the offer is given. The place where the contract is made is the controlling issue." *Id.* at ¶ 18, 889 P.2d at 281 (emphasis added) (footnotes omitted). "To establish that an employment contract was entered into within Oklahoma, the employee must prove that an employment offer was made by the employer or its agent and that *it was accepted by the employee in Oklahoma.*" *Id.* at ¶ 20 (emphasis added.)

In *General Electric Company v. Folsom*, 1958 OK 279, 332 P.2d 950, Folsom, an Oklahoma resident, accepted through the mail an offer of employment in Indiana contingent upon Fulsom successfully passing the company's physical examination after arriving in Indiana, which he did. Folsom was later killed in an automobile accident in New Mexico. Folsom's widow filed a claim for death benefits in Oklahoma. The employer challenged Oklahoma's jurisdiction alleging the employment contract had been entered into in Indiana. The trial court awarded the widow the maximum death benefit. The supreme court sustained the award, holding that when an employee has accepted an offer while in Oklahoma, and the employer has instructed the employee to report for an initial out-of-state employment assignment with employment *contingent upon completion of formalities at the out-of-state site*, the effective date of employment relates back to, and is coincident with, his acceptance in Oklahoma of said company's offer. *See also* 2 A. Larson *Workers' Compensation Law* § 26.23 (1997) (Compensation protection does not need to wait for the completion of formalities once the claimant has achieved sufficient connection with the employment to bring him within the orbit of the risks of that employment).

In the matter before us, the authority of the Joplin safety officer to hire the claimant is not at issue, thus distinguishing *Garrison v. Bechtel Corp.*, *supra*, and *Skilstaf/Stafco, Inc. v. Burckhalter*, 1996 OK CIV APP 149, 935 P.2d 403. The employer relies in part on the following language in *Burckhalter*: "The burden of proof was on the Claimant. If evidence existed that Employer gave its 'final assent' in the State of Oklahoma, it was not presented at trial."

■ In our opinion, the *Burckhalter* quote misstates the relevant law as set forth in *Garrison*: If an out-of-state employer extends an offer of employment to a prospective employee in the State of Oklahoma, and the employee gives his final assent to the offer while in Oklahoma, the employment contract is deemed to have been made in this jurisdiction. The *Burckhalter* quotation is obiter dictum unrelated to the determinative legal issue, *i.e.* the alleged agent with whom the claimant communicated while he was still in Oklahoma did not have authority to hire the claimant. Consequently, as in *Garrison*, the *Burckhalter* employer had not made an offer of employment to which the claimant could have given his final assent while in Oklahoma.

■ We find the trial court's conclusion that "final assent to employment did not occur until claimant successfully completed the road test in Joplin, Missouri," is erroneous as a matter of law, and is not supported by competent evidence. The court cited the employer's Exhibit # 1 as evidence of final assent to the claimant's employment. Although the order does not identify the party the court found gave that final assent, we infer the court found the employer did not give its final assent until May 17, 1995, as evidenced by the exhibit cited by the court. However, it is not the "final assent" of the employer that establishes the "place where the contract is made ..." but the "final assent" of an Oklahoma resident to an offer of employment *Garrison, id.* at ¶ 18, 889 P.2d at 281.

From the record before us, we find that an agent of the employer authorized to hire the claimant extended her an offer and assurance of employment Friday, May 12, 1995, and

that she gave her final assent to the offer while she was in this jurisdiction. The evidence does not support the trial court's finding that the offer of employment was contingent upon "successful completion of the road test." The new employees' orientation activities in which the claimant participated upon arriving in Joplin were merely formalities or contingent acts to be performed by the employee at some future time and somewhere other than Oklahoma. *Driver Management, Inc. v. Miller,* 1995 OK CIV APP 137, 908 P.2d 815(discussing *General Electric Co. v. Folsom, supra.*) If indeed it was company policy that employment was contingent upon an actual road test, and supervised completion of the written examination, there is no evidence the employer followed the policy. The fact that we should regard the certifications in Respondent's Exhibit # 1 as a mere formality is supported by the claimant's uncontradicted testimony of the informality surrounding their execution by the safety officer.

### III

We hold the claimant gave her final assent to an offer and assurance of employment while she was in Oklahoma, and therefore the trial court erred as a matter of law and fact in holding it lacked jurisdiction to proceed.

 We sustain the portion of the order denying the employer's oral request to supplement the record at a later date with either a live witness, or deposition testimony. Workers' Compensation Court Rules 8(C), and 19(E) and (F), 85 O.S.Supp.1996, ch. 4, app., support that conclusion. Rule 8(C) states in part: "Parties who fail to complete depositions in a timely manner will be deemed to have waived their right to take a deposition, *unless such failure is excused by the Court for good cause shown.*" (Emphasis added.) Rule 19 reads in relevant part:

E.  No later than twenty (20) days prior to the date of trial, all parties shall exchange ... a complete list of witnesses with all opposing parties.

F.  Both the Motion to Set for Trial and the Pretrial Stipulations shall list the names of all witnesses, including any expert witnesses, which the party intends to call at the time of trial. *Any witness not listed on the appropriate form shall not be allowed to testify. Failure to comply with this subsection shall result in the exclusion of the evidence submitted at the time of trial, unless excused by the Court for good cause shown.* (Emphasis added.)

We find the employer did not show good cause for its failure to timely amend its Form 10, and hold the trial court correctly denied its request to excuse the failure.

The order under review is sustained in part, and vacated in part. The matter is remanded with directions to adjudicate the claimant's entitlement to benefits under the laws of the State of Oklahoma.

SUSTAINED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.

TAYLOR, V.C.J., and REIF, J., concur.