2012 OK 30

**TRIAD TRANSPORT, INC. and Insurance Company of the State of Pennsylvania, Petitioners/Appellants,**

v.

**Carl WYNNE and the Workers' Compensation Court, Respondents/Appellees.**

No. 109,810.

Supreme Court of Oklahoma.

April 10, 2012.

Catherine C. Taylor, Perrine, McGivern, Redemann, Berry & Taylor, P.L.L.C., Tulsa, Oklahoma, for Petitioners/Appellants.

Angelica M. Ortiz, Law Offices of Daniel M. Davis, Oklahoma City, Oklahoma, for Respondents/Appellees.

COLBERT, V.C.J.

¶ 1 This matter presents the single issue of whether the Workers' Compensation Court has jurisdiction over the claim for injury. All other issues were reserved to the trial court. This Court determines that the employer's offer of employment was accepted by the worker in Oklahoma and therefore the Workers' Compensation Court has jurisdiction to hear the claim.

FACTS AND PROCEDURAL HISTORY

¶ 2 Carl Wynne (Claimant) was a truck driver. While he was in Tennessee and driving a truck for his former employer, he heard that Triad Transport, Inc. (Employer) was hiring. Claimant called Employer's headquarters in McAlester, Oklahoma and spoke to Employer's recruiter who had hiring authority. Claimant requested that an application be sent by fax to Odessa, Texas, where Claimant lives. He completed the application and sent it by fax to McAlester. A week or so later, the recruiter phoned while Claimant was driving along Interstate 40, somewhere between Georgia and Arizona. He does not remember in which state he was driving at the time of the call. From the call, Claimant understood that his application had been approved.

¶ 3 Claimant agreed to travel to McAlester for orientation. He returned his prior em-ployer's truck to a terminal in Tuscon, Arizona, and a Triad employee gave him a ride to a Triad satellite terminal in Laveen, Arizona. There, he passed a drug test, was provided a fuel card, and dispatched to Rockwall, Texas with a load. After delivering that load, he drove the empty truck to McAlester for orientation, which began on January 4, 2008 and continued four days.

¶ 4 At the orientation, Claimant underwent a DOT physical, a hydrochloric sulfide test, and a stress test. He completed the paperwork necessary for employment,[1] was assigned a truck, and was issued an employee photo identification card which listed his date of orientation as the date of his employment. In addition, he was told for the first time what would be his precise rate of pay. After orientation, Claimant was dispatched from McAlester to pick up a load. Payment for the trip from Arizona to McAlester was included in his first paycheck on January 25, 2008.

¶ 5 On June 28, 2010, Claimant was injured in a motor vehicle accident in Colorado while he was driving Employer's truck. He filed a Form 3 claim for benefits in the Oklahoma Workers' Compensation Court. The trial tribunal conducted a hearing solely on the issue of the court's jurisdiction. Two witnesses were presented, Claimant and the President of Employer. Claimant testified concerning when and where he was actually hired, and Employer's President testified to the general hiring practices of his company. The recruiter was not called to testify.

¶ 6 The trial tribunal made several findings of fact and concluded: "THAT this court has jurisdiction to hear the case of claimant's subsequent injury as claimant's hiring and final assent to permanent employment relationship between claimant and respondent occurred in Oklahoma." A three-judge panel of the Workers' Compensation Court unanimously affirmed the decision. This Court retained this appeal on its own motion.

STANDARD OF REVIEW

¶ 7 "The question of where an employment contract was entered into is noth-

---

1. Claimant completed a three-inch binder of pa-       perwork during the orientation.

ing more than an inquiry into a claimant's employment status within Oklahoma." *Garrison v. Bechtel Corp.*, 1995 OK 2, ¶ 24, 889 P.2d 273, 283–284. As such, it is a jurisdictional question, and is reviewable without a denial or an award of benefits. *See Id.*, ¶ 16, 889 P.2d at 280. This Court has held continuously that a decision of the Workers' Compensation Court concerning a jurisdictional question is reviewed de novo. *Id.*, ¶ 24, 889 P.2d at 283.

## ANALYSIS

■■■■ ¶ 8 Oklahoma's statutory code of workers' compensation applies when (1) a covered employee sustains a compensable injury within Oklahoma or (2) such employee sustains a compensable injury outside Oklahoma and the employment contract was formed within Oklahoma.[2] "To establish that an employment contract was entered into within Oklahoma, the employee must prove that an employment offer was made by the employer or its agent and that it was accepted by the employee in Oklahoma." *Garrison,* 1995 OK 2, ¶ 19, 889 P.2d at 281. "To constitute acceptance, there must be an expression of the intent to accept the offer, by word, sign, writing or act, communicated or delivered to the person making the offer or the offeror's agent." *Id.*, ¶ 18, 889 P.2d at 281. It is not the place of an employer's offer that establishes where the contract is made. Instead, "a contract is deemed to have been made where [the employee's] final assent to the offer is given." *Id.* Therefore, if the employee gives final assent to employment while within the territorial limits of Oklahoma, the Oklahoma Workers' Compensation Court has jurisdiction over the work-related injury. *See, e.g., General Electric Co. v. Folsom,* 1958 OK 279, 332 P.2d 950; *Alex-*

*ander v. Transp. Distrib. Co.,* 1998 OK CIV APP 10, 954 P.2d 1247. Conversely, if the employee's final assent to employment is given while the employee is outside the territorial limits of Oklahoma, the claim is not subject to Oklahoma's workers' compensation laws. *See, e.g., Garrison,* 1995 OK 2, 889 P.2d 273; *Daleo, Inc. v. Edmonds,* 1994 OK 122, 884 P.2d 544; *Driver Mgmt., Inc. v. Miller,* 1995 OK CIV APP 137, 908 P.2d 815.

■■ ¶ 9 When there are "mere formalities" or "contingent acts" that are performed in another state after final assent, the date of employment relates back to the date of the final assent and the location of the employee at the time of final assent is controlling. *Folsom,* 1958 OK 279, ¶ 7, 332 P.2d at 952 (Oklahoma employee's final assent in letter to employer out of state created an employment contract even though it was contingent upon a medical examination in Indiana because, upon completion of the requirement, "the effective date of his employment related back to, and was coincident with, his acceptance in Oklahoma."); *Alexander,* 1998 OK CIV APP 10, ¶ 18, 954 P.2d at 1251 (Where an employee gave her final assent to employment in Oklahoma, "the new employees' orientation activities in which the claimant participated upon arriving in Joplin were merely formalities or contingent acts to be performed by the employee at some future time and somewhere other than Oklahoma."); *Miller,* 1995 OK CIV APP 137, ¶ 9, 908 P.2d at 818 ("[E]mployer's imposition of a condition to the hiring to be performed other than in Oklahoma does not preclude formation of a contract of employment in this state where the parties manifest the requisite intent here.").

---

2. The statute in effect at the time of Claimants injury provided:

  [A]ll the provisions of the Workers' Compensation Act of this state, Sections 1 et seq. of this title, shall apply to employers and employees, irrespective of where [the] accident resulting in injury may occur, whether within or without the territorial limits of the State of Oklahoma, when the contract of employment was entered into within the State of Oklahoma, and the said employee was acting in the course of such employment and performing work outside the territorial limits of this state under [the] direction of such employer.

Okla. Stat. tit. 85, § 4 (2001). The current provision of the Workers' Compensation Code, effective August 26, 2011, is in accord. It provides: Every employer subject to the provisions of the Workers' Compensation Code shall pay or provide benefits according to the provisions of this act for the accidental injury or death of an employee arising out of and in the course of his or her employment, without regard to fault for such injury, if the employee's contract of employment was made or if the injury occurred within this state.
Okla. Stat. tit. 85, § 310 (2011).

¶ 10 Employer asserts that it made an offer of employment when the recruiter phoned while Claimant was traveling along I–40 between Georgia and Arizona. Employer argues the offer was accepted (1) in that phone conversation or (2) by Claimant's decision to bring one of Employer's trucks to Oklahoma and deliver a load to Texas on the way.[3] Employer characterizes the orientation in Oklahoma as a mere formality which followed Claimant's final assent to employment in a state other than Oklahoma. Claimant, on the other hand, argues that he did not give his final assent to employment until his orientation, testing, and training in Oklahoma.

¶ 11 The factual dispute at trial centered on the time and place of Claimant's final assent. Claimant testified to his understanding of the employment offer and his assent thereto. Employer's President testified as to the general hiring practices of his company and his confidence in the recruiter with whom hiring authority was vested. The only testimony as to what was actually understood from the conversation between Claimant and the recruiter was provided by Claimant.

■■ ¶ 12 "The relation of employer and employee is a first prerequisite to any award under the compensation act, and such relation is created by contract, either express or implied, or by the unequivocal acts of the parties recognizing the relationship." *Landrum v. Ownby*, 1955 OK 343, ¶ 0, 290 P.2d 400, 401 (Syl. n. 1 by the Court). Employer's evidence of its general hiring practices does not address the question of whether Claimant communicated final assent to an offer from the recruiter during a phone call. Only the recruiter and Claimant could address that question, and only Claimant testified. Nor can the acts of Claimant in moving the load from Arizona to Texas on the way to Oklahoma be considered to constitute "unequivocal" assent to an offer of employment, if such an offer was made in that conversation. The acts are entirely consistent with Claimant's testimony that he believed he was merely "getting [himself] back up to McAlester by means of moving a load for Triad" and that he needed to attend orientation to complete all the paperwork in order to provide his assent to employment.

■ ¶ 13 This Court's de novo review of the record, the testimony of the witnesses, and the arguments of the parties leads to the conclusion that Claimant's final assent to employment did not occur until he attended the orientation in Oklahoma. This is not a matter in which final assent was followed by "mere formalities" or "contingent acts" which relate back to the date of final assent and therefore the date of employment. Rather, in this matter, a prospective employee performed a service for the benefit of a prospective employer in order to facilitate the hiring process. That process began when Claimant first made contact with Employer's recruiter, but it did not end until Claimant gave his final assent to employment during the orientation in Oklahoma. The Workers' Compensation Court did not err in determining that it has jurisdiction to hear the claim.

AFFIRMED.

ALL JUSTICES CONCUR.

---

**3.** A third position was asserted at trial when Employer's President stated his belief that the state of an employee's residence determines

where the employment offer is accepted and the employment contract is formed.