1999 OK 23

**Helton W. TOLBERT, Petitioner,**

v.

**EASTERN CONTRACTING INC., The Ohio Casualty Group, and Oklahoma Workers' Compensation Court, Respondents.**

No. 90,859.

Supreme Court of Oklahoma.

March 30, 1999.

Donald E. Smolen and Bryan L. Smith, Tulsa, Oklahoma, for Petitioner.

Neil F. Layman, Oklahoma City, Oklahoma, for Respondents.

WATT, Justice.

## FACTS AND PROCEDURAL BACKGROUND

¶ 1   Claimant, Helton W. Tolbert, was employed by respondent, Eastern Contracting, Inc., as a backhoe operator and foreman. Tolbert claimed that he sustained an on-the-job-injury on Saturday, April 19, 1997 while holding a blower that was blowing string through a several hundred-feet long four-inch pipe. The string was attached to an inflatable parachute-like cone, which the force of the air from the blower propelled through the pipe. The string was then to be attached to cable, and the cable was to be pulled through the pipe.

¶ 2   Tolbert testified that on Saturday, April 19 he had mentioned to his supervisor, Mr. Jenkins, that his "back is given up" but that "Mr. Jenkins didn't hear me, the way I took it, so I finished blowing that one [pipe] I was on." Apparently no one worked the next day, Sunday, and Tolbert returned to work on Monday, April 21 and worked all day.

¶ 3   On Tuesday morning, April 22, Tolbert was riding to work in a company pickup with two fellow employees whom he supervised, James, who was driving, and Randy. Randy lighted a marijuana cigarette from which Tolbert took one or two "hits." James then stopped the truck and walked away. Tolbert testified that he tried to talk to James but, "He didn't want to talk to me." Tolbert admitted that Eastern had experienced previous problems with Tolbert's crew members smoking marijuana on the job and that Mr. Jenkins had warned Tolbert and the rest of his crew that if they were caught smoking marijuana on the job again they would be fired.

¶ 4   Tolbert testified that he went to a telephone and tried but was unable to contact the superintendent, Mr. Jenkins, and report that James had walked off; Jenkins was out of town. Tolbert then spoke with a fellow foreman, Ed Brewstein, and told him about the marijuana smoking incident and about James walking away from the company truck.

¶ 5   Tolbert admitted that he did not inform Mr. Jenkins of his claimed injury until late afternoon on Tuesday, April 22 and conceded that no one in a supervisory position with Eastern learned about the claimed back injury until after the marijuana smoking incident. Mr. Jenkins sent Tolbert to the doctor

immediately after Tolbert informed Jenkins that he had hurt his back. That Tuesday was the last day Tolbert worked for Eastern.

¶ 6 There is significant disagreement between the parties as to the date of Tolbert's claimed injury and, indeed, whether Tolbert sustained an on-the-job-injury at all. In his Form 3, Employee's First Notice of Accidental Injury and Claim for Compensation, Tolbert claimed that he had been injured on April 19, 1997 but Eastern, in its Form 2, Employer's First Notice of Injury, stated that it had received notice from Tolbert of a claimed injury that had occurred on April 22, 1997. In his Form 9, Motion to Set for Trial, Tolbert claimed temporary disability from April 22nd. At trial Tolbert's counsel expressly limited Tolbert's claim to disability arising from the claimed April 19 injury. Tolbert makes no claim of any injury or any other event that suddenly made his symptoms worse on the afternoon of April 22, 1997.

¶ 7 There is another issue presented by the record: Was Tolbert's disability, if any, the result of an on-the-job-injury at Eastern or was it caused by preexisting disability. Tolbert admitted that he had sustained a previous low back injury. The date of the first low back injury is uncertain. The record contains references to the previous work related low back injury and workers' compensation claim as having happened in either 1990 (report of Dr. G, Eastern's examining doctor based on medical records), 1991 (Tolbert's trial testimony), or 1993 (report of Dr. M, Tolbert's examining physician, based, presumably, on the history Tolbert gave him). In his Form 3 Tolbert answered "yes" to the question, "Are you a previously impaired person due to a prior workers' compensation injury or obvious and apparent pre-existing disability caused by accident, disease, birth defect or military injury."

¶ 8 Both Tolbert and Eastern introduced medical reports. Tolbert's examining physician, Dr. M, opined that Tolbert was one-hundred percent temporarily totally disabled as the result of an April 19, 1997 accident. Dr. G, Eastern's examining physician said in his report, "The injury, by his [Tolbert's] history appears to be work related" and that

Tolbert had zero percent temporary total disability and five-percent permanent partial impairment to his lumbar spine. Dr. G, however, also noted that Tolbert had sustained a previous low back injury and that x-rays revealed "degenerative changes" in his thoracic and lumbar spine. Dr. G's report expressed no opinion as to the cause of Tolbert's permanent partial disability.

¶ 9 Following the trial, the trial court denied benefits to Tolbert because it found that Tolbert "was not a credible witness." The three-judge panel affirmed the trial court on the ground that the trial court's order "was not against the clear weight of evidence nor contrary to law." The Court of Civil Appeals, with one judge dissenting, sustained the three judge panel's order.

## DISCUSSION

¶ 10 Tolbert claims that the trial court erred in finding he "was not a credible witness" because, according to Tolbert, the record would not support that his testimony was either controverted or inherently improbable. We disagree and hold that the record supports the Workers' Compensation Court's finding.

¶ 11 In denying Tolbert's claim, the trial court relied on *Bittman v. Boardman Co.*, 1977 OK 32, 560 P.2d 967, in which we held that the Workers' Compensation Court (then the State Industrial Commission) "may refuse to give credence to any portion of the evidence which in its opinion is not entitled to credence." There we went on to explain:

... A court is not obliged to accept testimony as true merely because there is no direct testimony contradicting it, where it contains inherent improbabilities or contradictions which alone, or in connection with other circumstances in evidence, justify an inference that the evidence is false. [Citations omitted.] Where the witness' own statements create an impression of an improbability of the facts to which he testified his evidence may be disregarded. [Citations omitted.]

¶ 12 According to the Court of Civil Appeals dissent and Tolbert's argument, Dr. G's report supports Tolbert's allegation that he

sustained an accidental injury arising out of his employment. To the contrary, Dr. G, who was Eastern's examining doctor, not only failed to express any opinion as to the causation of Tolbert's disability, he also noted that Tolbert had sustained a previous back injury and that his x-rays demonstrated degenerative changes in his low back. Further, Tolbert had characterized himself as "a previously impaired person" in his Form 3. These facts would amply support a finding that the disability Dr. G found was the result of Tolbert's preexisting disability rather than the result of an on-the-job-injury on April 19, 1997.

¶ 13 The Court of Civil Appeals dissent calls for reversal because the record does not reflect that Tolbert's marijuana use caused him to act irresponsibly. Whether Tolbert's marijuana use on April 22, 1997 rendered him incapable of acting responsibly is irrelevant to the issues in this case. In fact, Tolbert waived any right to compensation for an April 22 injury when he limited his claim to his alleged April 19 injury. What is relevant about Tolbert's drug use is that Tolbert gave his employer its first and only notice of a claimed injury only after he and a fellow employee whom he was supervising had used drugs, an act that Eastern had warned him was a firing offense.

¶ 14 Tolbert argues that his confession of marijuana use to his co-foreman, Ed Brewstein, and later to the superintendent, Mr. Jenkins, demonstrates his honesty. The conduct of James, the truck driver, who stopped the truck and got out and walked away when Tolbert and Craig started to smoke marijuana, however, would support the inference that Tolbert was motivated to confess because of fear that James would expose him if he did not confess. Given James's reaction to Tolbert's marijuana use, Tolbert's decision to confess quickly is at least as capable of the interpretation that he acted in an attempt to minimize the damage James's version of the story might do to him as that he acted in selfless honesty.

¶ 15 Other facts support the inference that Tolbert did not suffer an on-the-job-injury. Tolbert admitted he did not give an appropriate notice that he had sustained an on-the-job-injury to his superintendent on April 19, 1997. Tolbert also admitted he worked the better part of two additional days after his claimed injury before he notified his superintendent of his claimed injury and that he gave this notification only after he had that day smoked marijuana in a company truck on the way to work.

¶ 16 The Court of Civil Appeals dissent and Tolbert rely on *Hughes v. Cole Grain Co.*, 1998 OK 76, 964 P.2d 206. There we reversed the Workers' Compensation Court for denying an injured worker's claim because claimant's proof was not rebutted by any competent evidence. The facts in *Hughes*, however, are inapposite to the facts of this appeal. In *Hughes*, the claimant sustained a low back injury, which claimant's supervisor confirmed that she had reported immediately after it occurred. Claimant also introduced into evidence her examining physician's medical report in which her doctor expressed the opinion that claimant's disability had been caused by her on-the-job-injury. Respondents' medical report in Hughes was excluded under Rule 19, Rules of the Workers' Compensation Court, because it had been furnished to Claimant late.

¶ 17 The facts of this appeal differ markedly from those in *Hughes*, where, clearly, there was no competent evidence before the Workers' Compensation Court to support that court's denial of benefits. Here, unlike the situation before us in *Hughes*, whether there was an accidental injury on April 19 is open to question. Tolbert worked for nearly two days before giving his employer notice that he had sustained an on-the-job-injury three days earlier but nevertheless complained of pain on the 22nd so severe that his supervisor sent him to the doctor. Tolbert claimed an on-the-job-injury only after confessing to drug use, misconduct which he admitted he knew was a firing offense. There is also competent evidence in the record to support a finding that the five percent permanent impairment to Tolbert's low back found by Dr. G was the result of a preexisting disability.

■ ¶ 18 The facts of this appeal are more similar to those in *Bittman* than to those in *Hughes*. In *Bittman*, claimant

claimed that he had been knocked unconscious when he fell after jumping off a raised steel plate. Shortly after he regained consciousness, however, claimant had told his foreman that he lost consciousness while standing on the ground because, he thought, he was "run down" and short of sleep because of family problems. Here, as in *Bittman*, there was evidence, described in detail above, to support the trial court's conclusion that the claimant did not sustain an on-the-job-injury. "All findings of fact made in the trial tribunal's decision under review are conclusive and binding unless they have been ascertained to lack support in competent evidence." *Parks v. Norman Municipal Hospital*, 1984 OK 53 ¶ 12, 684 P.2d 548. Competent evidence supports the Workers' Compensation Court's decision to deny Tolbert workers' compensation benefits. We are constrained under *Parks*, therefore, to sustain the Workers' Compensation Court.

■ ¶ 19 Finally, we share the concern expressed by the dissent in the Court of Civil Appeals that a trial court's findings characterizing a claimant "as not a credible witness" should not be allowed to become "boilerplate in orders of the Workers' Compensation Court." Clearly, a finding that a claimant was "not a credible witness" in the absence of record evidence to support it would call for reversal. Such is not the case here, however. As we explained above, there is evidence in the record before us to support the Workers' Compensation Court's conclusion that Tolbert's testimony was not credible. Thus, we reject the dissent's contention that the Workers' Compensation Court's finding on this score was not supported by the record.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, ORDER OF A THREE–JUDGE PANEL OF THE WORKERS' COMPENSATION COURT SUSTAINED.

HARGRAVE, V.C.J., HODGES, LAVENDER, KAUGER, and WATT, JJ., concur.

OPALA, J., concurs in result.

¶ 1 I concur in sustaining the three-judge panel's order but not in the court's opinion.

SUMMERS, C.J. and WILSON, J., concur in part, dissent in part.

SIMMS, J., dissents.

¶ 1 I would withdraw certiorari as improvidently granted.