2006 OK 48

**Bart Franklin DAVIS, Petitioner,**

**v.**

**SOUTHWESTERN BELL TELEPHONE,** Southwestern Bell Telephone (Own-Risk) and The Worker's Compensation Court, Respondents.

**No. 101,267.**

Supreme Court of Oklahoma.

June 27, 2006.

J.L. Franks, Tomy W. McDonald, Frasier, Frasier & Hickman, LLP, Tulsa, OK, for Petitioner.

David J.L. Frette, Hastings & Associates, Tulsa, OK, for Respondents.

HARGRAVE, J.

¶1 Judge Richard L. Blanchard denied claimant's workers' compensation claim on the grounds that he failed to rebut by a preponderance of the evidence the presumption that the injury was not work related because he did not report the injury to employer or receive medical treatment for his alleged work-related injury within thirty (30) days from the date of the injury.

¶2 Title 85 O.S.2001 § 24.2 provides that if an injury occurs on the job, the injured employee must either give notice to the employer or receive medical treatment within thirty (30) days of the date the injury occurred or face the rebuttable presumption that the injury was not work related. The presumption must be rebutted by a preponderance of the evidence.[1]

¶3 The claimant in this case, Bart Franklin Davis, was employed by respondent Southwestern Bell as a customer service

---

1. See text of statute at footnote 6.

technician. He claimed injury on the job on January 30, 2003, when a ladder fell on his shoulder. It is undisputed that he did not receive medical treatment for, or report the injury to the employer within thirty (30) days thereof, and that he continued to work at his job. About two months later, he sought medical treatment from his personal physician for pain and other trouble with the shoulder. When told that he would need surgery on his shoulder, he notified his employer sometime between March 28, 2003 and April 14, 2003. He filed his Form 3 in mid-April seeking temporary total disability compensation, and subsequently filed an amended Form 3 seeking permanent partial disability compensation.

¶ 4 The employer raised affirmative defenses of pre-existing condition and the § 24.2 presumption that the injury was not work related due the employee's failure to give notice. A hearing was held before Judge Richard L. Blanchard at which both claimant and respondent introduced evidence.

¶ 5 At the hearing, the claimant testified that he believed that his shoulder was merely bruised and he did not wish to file a workers' compensation claim if that were the case. He testified that he did not believe the injury was serious and that he hoped that it would heal on its own. When he later began to suffer pain and restricted use of his shoulder, he sought treatment. Upon learning that the injury was more serious than he had originally thought, he filed a Form 3. Claimant offered doctors reports from Dr. H dated May 30, 2003 and September 22, 2003 and reports from orthopaedic Dr. H, as well as MRI referral form and office notes of physician's assistant K.D. dated March 29, 2003. Claimant's expert, Dr. H was of the opinion that claimant's injuries were work related

¶ 6 The employer offered medical report of Dr. L dated November 13, 2003 and patient encounter forms and office notes from the M.R.I. evaluation. Employer points out that employee's versions of how the injury occurred differed. To the physician's assistant at the MRI intake on March 28, 2003, he presented that he had been lifting a ladder. Claimant's expert, Dr. H, reported that claimant presented that his injury happened when a large ladder fell and hit him on the right shoulder. Claimant also variously described the injury to medical providers as his shoulder having "popped out" or that his shoulder was separated.[2] Respondent contrasts this with claimant's testimony to the court that he thought it was only a bruise at the time.

¶ 7 Respondent's expert, Dr. L reported that employee had suffered a separated shoulder some ten years before while participating in high school wrestling. Dr. L's opinion was that he was unable to state within a reasonable degree of medical certainty that this was a work-related injury due to substantial pre-existing problems with the right shoulder. He opined that the claimant's current condition may well represent simply a progression of the injuries while wrestling in high school.[3]

¶ 8 At the conclusion of the hearing, the trial judge ruled that the claimant failed to rebut the § 24.2 presumption and denied the claim. Claimant sought review from the three-judge panel. The three-judge panel affirmed the trial judge's order, finding that it was not against the clear weight of evidence nor contrary to law. The claimant appealed.

¶ 9 Claimant argued on appeal that he had successfully rebutted the presumption and that he showed good cause for failure to timely report the injury and that, accordingly, there was no evidence against awarding compensation to him because respondent did not show that the injury could have been caused by something else.

2. Intake report of Physician's Assistant, K.D. on 3/29/03 states that "patient has had right shoulder pain pretty severe for the past two weeks. Believes that he probably separated it. He did this from lifting a ladder." Report of orthopaedic Dr. H on 4/14/03 reports that claimant was working with a thirty foot extensions ladder and it slipped on January 30, 2003. He reports that

*at that time,* his shoulder "popped out ..." (emphasis added)

3. The 4/14/03 report of claimant's Dr. H, the orthopaedic specialist, also gives a "history of some injuries of shoulder in high school while wrestling and possible recurrent dislocations, particularly the right."

¶ 10 Employer argued on appeal that there was competent evidence to support the trial judge's ruling, because of the evidence that the claimant gave different versions of what had happened, different versions of the shoulder injury and because of the previous shoulder problems while wrestling.

¶ 11 The Court of Civil Appeals reversed, determining that the question of whether the presumption has been rebutted was a question of law and should be reviewed *de novo*. The Court of Civil Appeals, relying on *Hawkins v. Okla. Co. Court Clerk's Office*, 2001 OK CIV APP 83, 26 P.3d 124, determined that the trial judge, in deciding whether the presumption has been rebutted, should consider only the evidence presented by the claimant. The Court of Civil Appeals concluded that claimant's evidence and all reasonable inferences therefrom, when viewed in his favor and without consideration of any evidence favorable to the employer, was sufficient to overcome the presumption. The Court of Civil Appeals vacated the trial court's ruling that the presumption had not been rebutted, and remanded for the trial court to consider all of the evidence and determine whether claimant sustained his burden of persuading the trial court by a preponderance of the evidence that his injury arose out of and in the course of his employment.

¶ 12 Applying the reasoning of *Hawkins, supra*, the Court of Civil Appeals determined that once the preliminary determination has been made by the trial judge, considering only the evidence of the claimant, that the presumption has been successfully rebutted, the claimant then has the ultimate burden of persuading the trial court by a preponderance of the evidence that his injury arose out of and in the course of his employment, resolution of which requires the trial court to consider all of the evidence.

¶ 13 Because the Court of Civil Appeals applied an incorrect standard of review, we granted claimant's petition for certiorari. This Court has not yet had occasion to consider the current version of § 24.2(A), after amendment in 1997.[4]

¶ 14 Claimant argued that he had shown good cause for his failure to notify the employer. The good cause excuse, however, is no longer part of § 24.2.[5] Legislative amendment in 1997, resulting in the current version of § 24.2, removed the good cause excuse and also the trial court's discretion to find good cause shown.[6] Prior to amendment, a failure to give oral or written notice to the employer within sixty (60) days from the injury would result in the claim being forever barred unless the employee received medical attention from a licensed physician during the 60–day period or *in the discretion of the trial judge, good cause was shown by the employee to the Court to excuse such failure of notice or treatment.* Now, the legislature has removed the good cause element and created a rebuttable presumption that the claim is not work related. The intent clearly was to remove the "good cause shown" excuse for failure to give the required notice, and to remove the trial court's discretion to excuse the failure of notice for good cause shown.

¶ 15 Rebutting the presumption in § 24.2(A), however, does not place any additional burden on the claimant seeking to prove a workers' compensation claim. Any claimant seeking to recover under the Work-

---

4. Laws 1997 ch. 361 § 10, eff. Nov. 1, 1997.

5. 85 O.S. *Supp.1986* § 24.2(A) provided, in pertinent part:
   Unless an employee gives oral or written notice to the employer within sixty (60) days of the date an injury occurs or the employee receives medical attention from a licensed physician during the sixty-day period from the date an injury occurred, the claim shall be forever barred, *unless, in the discretion of the trial judge, good cause is shown by the employee to the Court to excuse such failure of notice or treatment* .... (emphasis added)

6. 85 O.S.2001 § 24.2. **Notice of Injury to employer.**
   "A. Unless an employee or former employee gives oral or written notice to the employer or former employer within thirty (30) days of the date an injury occurs or the employee receives medical attention from a licensed physician during the thirty-day period from the date an injury occurred, the rebuttable presumption shall be that the injury was not work related. Such presumption must be overcome by a preponderance of the evidence...."

ers' Compensation Act is required to prove, by a preponderance of the evidence, that the injury is work related.[7] The statutory presumption changes nothing. Presumptions shift the burden of proof. The existence of a presumption imposes on the party against whom it is invoked the duty to offer evidence to the contrary. *See, Stumpf v. Montgomery,* 1924 OK 360, 226 P. 65, 69. If the opponent does offer evidence to the contrary, the presumption disappears and the case stands upon the facts and the reasonable inferences to be drawn therefrom. *Id.* Section 24.2(A), however, places the burden of proof on the person who has that burden already.

¶ 16 Thus, Section 24.2 only requires a claimant to do what he or she is already required by law to do. Once the claimant has established by a preponderance of the evidence that the injury arose out of employment, the burden shifts to the employer to refute work-related causation. *Pauls Valley Travel Center v. Boucher,* 2005 OK 30, 112 P.3d 1175. Whether disability results from an accidental injury, or from a pre-existing disease or prior injury is a fact question for determination by the workers' compensation court. *Berg v. Parker Drilling Co.,* 2004 OK 72 ¶ 13, 98 P.3d 1099. Settled law requires the workers' compensation court to determine the value of conflicting evidence and resolve the fact issues and enter an order that is sufficiently definite to enable the appellate courts to review it intelligently. *Clayton v. Fleming Companies, Inc.,* 2000 OK 20 ¶ 13, 1 P.3d 981, 984. It is the duty of the workers' compensation court to grant a full and complete hearing to the parties before making or denying an award. *Id.* at ¶ 22, p. 986.

¶ 17 Title 85 O.S. § 26 provides that the workers' compensation court has full power and authority to determine all questions in relation to payment of claims for compensation under the provisions of the Workers'

Compensation Act. Upon a hearing pursuant to this section, either party may present evidence and be represented by counsel. The decision of the court shall be final as to all questions of fact, and, except as provided in Section 3.6, as to all questions of law.[8] The trial judge's finding that the claimant failed to rebut the presumption is a finding that the claimant has failed to prove, by a preponderance of the evidence, that his claim is work related. The standard of review on appeal remains unchanged.

¶ 18 The appellate court is simply to canvas the facts, not with the object of weighing conflicting evidence, but for the purpose of ascertaining whether the trial court's decision is supported by any competent evidence. *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548, 552. By statute, all findings of fact made in the workers' compensation court are conclusive and binding unless they are not supported by any competent evidence. Only in the absence of any competent evidence may the decision be viewed as erroneous as a matter of law and hence subject to vacation. *Id.* Title 85 O.S. § 1.1(C) provides that the provisions of the Workers' Compensation Act shall be strictly construed by the workers' compensation court and appellate courts.

¶ 19 Both sides presented evidence to the trial judge who determined that the claimant had failed in his burden to refute the presumption by a preponderance of evidence; that is, the trial judge determined that the claimant failed to prove by a preponderance of the evidence that his injury was work related. The three-judge panel affirmed, ruling that the decision was not against the clear weight of the evidence. On appeal, if the order of the three-judge panel is supported by any competent evidence, it must be sustained. *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548. We hold that the trial court's order finding claimant failed to rebut the § 24.2 presump-

---

7.  Title 85 O.S. Supp.2005 § 1.1(B) provides that the burden of proof, by a preponderance of the evidence, shall be on the party requesting benefits or relief pursuant to the provisions of the Workers' Compensation Act unless otherwise specifically provided for by law.

8.  85 O.S.2001 § 3.6 sets out the appellate procedure. If appealed to the three-judge panel, the panel may reverse or modify the decision only if it determines that such decision was against the clear weight of the evidence or contrary to law.

tion, and thus failed to show his claim was work related, is supported by competent evidence. The order of the three-judge panel, concurring in the trial judge's denial of benefits, is accordingly sustained.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS IS VACATED AND THE ORDER OF THE THREE–JUDGE PANEL IS SUSTAINED.**

¶ 20 CONCUR: WATT, C.J., WINCHESTER, V.C.J., LAVENDER, OPALA, KAUGER, EDMONDSON, JJ.

¶ 21 DISSENT: COLBERT, J.

¶ 22 NOT PARTICIPATING: TAYLOR, J.

2006 OK 47

**Phillip Roger LIERLY and Joe Bill Lierly, Appellees,**

v.

**TIDEWATER PETROLEUM CORPORATION, Appellant.**

No. 100,844.

Supreme Court of Oklahoma.

June 27, 2006.

As Corrected June 27, 2006.

CEEDINGS CONSISTENT WITH THIS OPINION.

Tom C. Lane, Sr., Sapulpa, OK, for appellees.

Sam T. Allen, IV, Sapulpa, OK, for appellant.

TAYLOR, J.

¶ 1 Appellant presents two questions of law for certiorari review: 1) Is an oil and gas lessee subject to liability for malicious prosecution for seeking an injunction against the surface owner who interferes with lessee's entry upon the land at a specific location? and 2) Is a defendant entitled to present closing argument on the amount of punitive damages in the second stage of a jury trial even though the plaintiff waives closing argument? We answer both questions in the affirmative. We hold the district court erred in refusing to allow defendant/appellant to make closing argument to the jury regarding the amount of punitive damages in the second stage of the jury trial. Accordingly, we reverse the district court's order denying defendant/appellant a new trial and that part of the district court's judgment awarding plaintiffs/appellees $11,000.00 for punitive damages. We remand this cause to the district court for a new second stage trial on the amount of punitive damages to be awarded plaintiffs/appellees.

## I. Facts and Proceedings Below

¶ 2 The evidence in the appellate record reveals the following pertinent facts. In May, 1994, Bobby G. Roberts (Roberts) purchased some thirteen oil leases and the surface rights to four tracts of land in Creek County from the L.B. Jackson Production Company under the terms of an Amended Plan for Reorganization confirmed in January, 1990, by the United States Bankruptcy Court for the Northern District of Oklahoma. The Emma Hengst tract and lease were included in the purchase. In June, 1994, Roberts assigned these surface rights and oil leases to his corporation, Tidewater Petroleum Corporation, appellant (Tidewater). Roberts is the principal owner, officer and manager of Tidewater.

¶ 3 This litigation involves the Emma Hengst tract and oil lease. The eighty-acre Emma Hengst tract is divided by Polecat Creek. The Emma Hengst lease has two producing oil wells. One well and tank battery are located on the west side of Polecat Creek and one well is on the east side. The L.B. Jackson Production Company owned the surface and operated the oil wells on the Emma Hengst tract for more than thirty years. The Jackson company accessed the oil wells through the gate and road on the neighboring Robbins' property on the east side of the Emma Hengst tract. While Tidewater owned the surface and operated the oil wells, it continued to access the Emma Hengst tract from the east side using the gate and road on the Robbins' property.

¶ 4 In April, 1997, Tidewater sold the surface rights to the Emma Hengst tract to Phillip Roger Lierly and Reesa Kay Lierly, husband and wife, and Joe Bill Lierly and Kerry Dawn Lierly, husband and wife, except a right-of-way on the west side of the tract. Tidewater continued to access the well on the east side of the Emma Hengst tract through the gate and road on the Robbins' property.

¶ 5 State Highway 117 borders the south edge of the Emma Hengst tract. Sometime earlier, the Oklahoma Highway Department constructed a driveway across the highway right of way and a gate for entry onto the Emma Hengst tract. However, the tract was not accessible from Highway 117 because the land dropped off some fifteen feet just inside the gate. Neither the Jackson company nor Tidewater improved the land for entry off Highway 117.

¶ 6 Shortly after purchasing the Emma Hengst tract, Phillip Roger Lierly and Joe Bill Lierly, appellees (Lierlys), started to improve the land for access off Highway 117. Tidewater asked the Lierlys' permission to access the wells off Highway 117. The Lierlys asked Tidewater to share in the cost of constructing the new road. Tidewater refused to pay any of the road construction costs.

¶ 7 In July, 1997, Tidewater filed suit in the district court alleging that entry off

