OSCN Found Document:CARBAJAL v. PRECISION BUILDERS, INC.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 CARBAJAL v. PRECISION BUILDERS, INC.
2014 OK 62
Case Number: 111114
Decided: 07/01/2014
As Corrrected: July 3, 2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 62, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL 
RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

ANDRES CARBAJAL, 
Petitioner/Appellant,
v.
PRECISION BUILDERS, INC., and/or 
MARK DICKERSON, and/or HOOVER CONSTRUCTION CO., and/or DAVITA, INC., and THE 
WORKERS' COMPENSATION COURT, Respondents,
and
NO INSURANCE, 
and/or NEW HAMPSHIRE INSURANCE CO., and/or TEXAS MUTUAL INSURANCE CO. (NLC), 
Insurance Carriers.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION 
NO. IV

¶0 Workers' compensation claimant sought benefits after he allegedly fell 
from scaffolding. The Workers' Compensation Court trial tribunal concluded that 
the claimant was not an employee. A three-judge panel of the Workers' 
Compensation Court affirmed the order of the trial tribunal. The Court of Civil 
Appeals sustained the order of the three-judge panel, and the claimant sought 
certiorari review in this Court. We hold that the factors applied from Page 
v. Hardy, 1958 OK 283, 334 P.2d 782 show that the 
construction worker was an employee and not an independent contractor when he 
was allegedly injured.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT 
OF
CIVIL APPEALS IS VACATED; ORDER OF THE THREE-JUDGE REVIEW PANEL 
OF
THE WORKERS' COMPENSATION COURT IS VACATED; AND THE PROCEEDING 
IS REMANDED TO THE WORKERS' COMPENSATION COURT FOR
FURTHER 
PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT

Catherine Gatchell Cooper, Tulsa, Oklahoma, for Petitioner
Richard L. 
Blanchard, Tulsa, Oklahoma, for Respondent, Hoover Construction Co.
Dana L. 
Gish, Tulsa, Oklahoma, for Texas Mutual Insurance Co.


EDMONDSON, J.
¶1 Claimant, Andres Carbajal, alleged that he was injured[1] when scaffolding he was on 
was blown over and he fell while working on a construction project in Okmulgee, 
Oklahoma. He filed a claim in the Workers' Compensation Court and alleged that 
he was an employee of Precision Builders, Inc., and/or Mark Dickerson 
(Precision) when he fell with the scaffolding.[2] The trial tribunal denied the claim 
upon determining that claimant was an independent contractor and not an 
employee. The three-judge panel affirmed the trial tribunal and the panel's 
order was sustained by the Court of Civil Appeals. The question presented on 
certiorari is whether petitioner was an employee or independent contractor.
¶2 Claimant filed a Form 3 in June 2010 and alleged that he fell from 
scaffolding while working at a construction site on April 26, 2010. The 
substantive rights and obligations of the parties in a workers' compensation 
proceeding are based upon the statutes in effect on the date of the worker's 
injury.[3] The 
law in effect on April 26, 2010, defined "employee" for the purpose of workers' 
compensation as "any person engaged in the employment of any person, firm, 
limited liability company or corporation covered by the terms of the Workers' 
Compensation Act ..."[4] and "employment" as "work or labor in a trade, 
business, occupation or activity carried on by an employer ..."[5] and an "employer" is a 
"person, partnership, [etc.] . . . employing a person included within the term 
'employee' as defined herein."[6] There is a long history in this state of not 
including an independent contractor within the statutory definition of an 
employee.[7] 
Consistent with this distinction concerning the difference between an employee 
and an independent contractor, 85 
O.S.Supp.2009 § 11 classified an independent contractor as a type of 
employer who is required to be liable for the workers' compensation due to his 
or her employees.[8]
¶3 In Page v. Hardy, 1958 
OK 283, 334 P.2d 782 , this 
Court set out several factors to be considered when determining whether an 
employee/employer relationship exists. Those are:

 
 (a) the nature of the contract between the parties, whether written or 
 oral; (b) the degree of control which, by the agreement, the employer may 
 exercise on the details of the work or the independence enjoyed by the 
 contractor or agent; (c) whether or not the one employed is engaged in a 
 distinct occupation or business for others; (d) the kind of occupation with 
 reference to whether, in the locality, the work is usually done under the 
 direction of the employer or by a specialist without supervision; (e) the 
 skill required in the particular occupation; (f) whether the employer or the 
 workman supplies the instrumentalities, tools and the place of work for the 
 person doing the work; (g) the length of time for which the person is 
 employed; (h) the method of payment, whether by the time or by the job; (i) 
 whether or not the work is a part of the regular business of the employer; 
 (j) whether or not the parties believe they are creating the relationship of 
 master and servant; and (k) the right of either to terminate the 
 relationship without liability.
Page v. Hardy, 334 P.2d at 784-785.
¶4 The claimant testified at a hearing before the trial tribunal. Claimant is 
"a documented Hispanic worker" who does not speak English and did not complete 
the third grade. He started working for Precision in 2006 on a ranch in Texas 
where he did construction work. He lived there while working on the site. In 
2009 he worked January and February, then stopped, and in August he went back to 
work for Precision.
¶5 Claimant testified on the degree of control exercised by his supervisors. 
He worked as part of a crew of eight to nine people, and his supervisors at 
Precision told him where to go, when to be there, when he could leave, and when 
he could go to lunch. The crew would go to lunch together. He worked from eight 
to fourteen hours a day. He was not allowed to come and go from a construction 
site whenever he wanted. His work was framing, building doors, and installing 
sheetrock. He did not read blueprints or construction plans, and he did what he 
was told to do. He testified he had no "special schooling or training" to teach 
him how to do construction work. He answered in the affirmative when questioned 
whether he was "simply told what to do, and you did it with your hands...."
¶6 He testified he would go from one job site to another as directed by his 
supervisors who were relating Mark Dickerson's directions, but sometimes there 
was a week or two, "possibly three weeks the most," but "sometimes" it was 
longer between construction assignments. He stated that between the assignments 
from Precision there was a block on a street where he could go with "a lot of 
people standing in there, and sometimes they go and hire you for one day . . . 
[s]ometimes it's just like for one day or two," and he was paid seven to eight 
dollars per hour. There was no testimony on the nature of the work claimant 
performed when working for a day or two for the various people who hired him on 
the street.
¶7 He testified Mark Dickerson was "the boss" at Precision and he took orders 
from Mr. Dickerson through two supervisors who speak Spanish. He stated he was 
working on a project on a ranch in Texas and two supervisors told him of the 
project in Oklahoma, because "it was by Mark's orders . . . and Mark gave me the 
address." When questioned whether Mark "invited" claimant to go to Oklahoma 
instead of ordering him to go, the claimant said, "No. He told me to go to 
work." He testified "Marcos" (Mark Dickerson) paid him $400 "gas money" for him 
and another Precision worker to travel from Texas to Okmulgee, Oklahoma, to work 
at the construction site. He stated he did not have a driver's license. The 
other worker was a friend who gave him rides to work. He answered in the 
affirmative when questioned whether he was "sometimes paid for travel 
costs."
¶8 Claimant testified he worked on construction sites where he would use a 
hammer for framing and a cordless drill for metal studs and screws. He testified 
he has his own tool belt and he owns a cordless drill, measuring tape, knife, 
pencil, level, pliers, and a sheetrock gun. He stated he has never used "leg 
extensions" to install sheetrock and he does not own a nail gun or 
compressor.
¶9 He also testified his supervisor at Precision provides a "big orange box" 
with tools and "we all take tools from there." He stated he used tools from the 
tool box supplied by Precision to perform his assigned tasks. He stated some of 
his co-workers used tools from the tool box and some did not. He did not provide 
the lumber or the metal framing used in the construction projects. When asked if 
he paid for nails and screws or "that kind of thing," he responded with "I don't 
buy anything for work." He testified he did not supply the scaffolding he was on 
when he fell.
¶10 Claimant testified he was paid $15.00 per hour, sometimes in cash and 
sometimes by a money order. He testified sometimes he is paid $500, sometimes 
$200, "sometimes he [Dickerson] has to complete what he owed me for past weeks." 
He stated he was paid by the hour, and that his two supervisors, Key or 
Rodriquez, "they write them [the hours] down." Claimant testified Precision 
never provided him any forms relating to income taxes. Claimant obtained 
information from the Internal Revenue Service that Precision had submitted forms 
to the IRS in 2008 and 2009 that designated amounts paid to claimant as 
"non-employee compensation."
¶11 Counsel for respondent provided a copy of a $3,000 check written in 2009 
and made payable to the claimant. The check states "Subcontract" on its memo 
line. Claimant testified that he does not know what it says, "I just go and cash 
it." Counsel for respondent asked claimant why he was paid $3,000 with three 
$1,000 money orders in May 2010. He stated that he was owed money for work he 
did on "the ranch," and he had to pay others for work they did in Okmulgee. He 
testified he was given $3,000 because he was supposed to pay his friend and 
another person. He was directed to pay them because "they didn't have an ID to 
cash the checks," and he "had proper identification and a social security number 
... and paid other people for Marcos [Mark Dickerson]." Claimant stated he did 
not know "why he [Dickerson] did it like that, because sometimes he gave us cash 
too." He stated he never held himself out as "Carbajal Construction Company." He 
was never asked to negotiate contracts with Precision.
¶12 No testimony was offered at the hearing by Respondent.[9] Respondent introduced three 
exhibits, the information from the IRS for 2008 and 2009, the $3,000 check, and 
three $ 1,000 money orders dated May 21, 2010, and made payable to "Andreas 
Carbajal."
¶13 Respondent argued in this Court that on appeal the "any competent 
evidence" standard of review should apply and an appellate court "will defer to 
the weighing of evidence by the trial court." Respondent relied on two opinions 
by the Court of Civil Appeals as authority supporting the argument. Treat v. 
McDonald's, 1993 OK CIV APP 
89, ¶ 7, 854 P.2d 393 and 
Rivera v. Wal-Mart Stores, Inc., 1999 OK CIV APP 22, ¶ 3, 977 P.2d 366. Respondent's argument 
and nonprecedential cited authority[10] are not applicable to this controversy.[11]
¶14 Respondent's argument does not make a distinction between jurisdictional 
facts and nonjurisdictional facts for the purpose of this Court's review of an 
order of the Workers' Compensation Court. Historically, this Court has used a 
de novo review when examining a jurisdictional issue such as whether a 
claimant possessed the status of "employee" at the time of injury.[12] We have 
explained that "Because the error sought to be corrected is one from resolution 
of a jurisdictional fact issue, no deferential standard of review may be 
accorded here to the trial tribunal's finding of employment status."[13] In summary, 
whether claimant was an employee or an independent contractor is a 
jurisdictional issue which requires this Court to exercise a de novo 
review of the record without deference to the findings of fact or legal 
conclusions made by the trial tribunal or the three-judge panel.[14]
¶15 We have said that "An independent contractor is one who agrees to perform 
a certain service without the control, supervision, or direction of his employer 
in all matters connected with the performance of the service except the result 
or product of the work."[15] We have also explained concerning the 
employer-employee relationship that "[n]o one factor is controlling, and the 
relationship must be based on the set of facts peculiar to the case."[16]
¶16 Claimant testified that his hourly wage was $15.00 and that two people 
who spoke Spanish and gave him directions kept track of his time. He testified 
that he was instructed what to do at the construction sites. He testified that 
he brought his own tool belt with tools to work. He also testified that 
Precision provided tools for him and other co-workers to use. His contract was 
oral and he was told what construction sites to travel to and work at. His 
uncontested testimony is that Precision paid him money for traveling to 
different construction sites, including the one in Oklahoma where he was 
allegedly injured.
¶17 Precision points to claimant bringing his tool belt with tools to work. 
However, it is uncontested that a person acting as his supervisor in giving him 
directions for Precision also supplied tools for both claimant and his coworkers 
to use, and that these supplied tools were maintained by the supervisor on his 
truck at the construction sites. Claimant used some of these supplied tools. The 
fact that claimant used his own tools in addition to those supplied by a person 
acting as Precision's supervisor points to an employer allowing a convenience to 
an employee instead of an independent contractor required to maintain and use 
his or her own tools to complete a project. Claimant did not provide the lumber, 
metal, nails, or screws.
¶18 Respondent points to a check which states "Subcontract" on the memo line, 
Precision's IRS forms, and the fact that the check was for $3,000 and the total 
for the three money orders was $3,000. Between the years 2006 and 2010 when 
claimant was working for Precision, Respondent points to one check in 2009 and 
three money orders issued after the alleged date of injury. Claimant testified 
that Precision directed him to use this money to pay other workers who lacked 
identification and social security numbers. This testimony is not contested. 
Respondent states that the IRS forms for 2008 and 2009 show a contradiction in 
the testimony by claimant, because they show claimant received compensation as a 
non-employee. The fact that Precision did not withhold taxes and claimant paid 
others is part of our analysis,[17] but these two facts are not determinative when 
considered with other facts. These forms were prepared and submitted to the IRS 
by Precision. Claimant testified that he did not know anything about taxes.
¶19 The testimony and exhibits show that Precision treated claimant as an 
employee for every purpose except for the IRS forms and the one check where 
"Subcontract" was written on the memo line of the check. But, testimony showed 
that claimant cannot understand English and was told to use the funds given to 
him for paying other coworkers. Precision knew of this language barrier when the 
phrase "Subcontract" was handwritten on the check in English.
¶20 The degree of control exercised by Precision over claimant at the 
construction site, the lack of claimant's abilities to read plans and 
blueprints, Precision providing tools for claimant and others to complete the 
assigned tasks, and travel money provided to claimant to reach the construction 
sites show that Precision treated claimant as employee. Claimant's work was not 
based upon him possessing a professional or trade license, or that he was an 
artisan with a specialized skill, or that he possessed specialized educational 
skills requiring him to use personal judgment and skill independent of 
Precision's control or supervision when he completed construction tasks.
¶21 Counsel for Precision not appearing in this proceeding, but appearing 
before the three-judge panel, made the argument "there was no specific testimony 
. . . [t]here was nothing about direction and controls and orders" concerning 
the Oklahoma job. We disagree. Claimant testified how Precision controlled him 
at construction sites. He was at a Precision Construction site in Oklahoma. 
There was no cross-examination of claimant eliciting testimony stating 
claimant's direction and control was less in Oklahoma than at job sites in 
Texas. There was no testimony before the trial tribunal that Precision's control 
over the claimant was anything less than that stated by claimant. There was 
testimony that claimant was injured 45 minutes into his first day on the 
Oklahoma job. This fact does not negate claimant's testimony on the control and 
direction exercised by Precision over claimant.
¶22 Counsel for Precision not appearing in this proceeding, but appearing 
before the three-judge panel, made the argument that claimant worked for others 
besides Precision and this fact showed that he was an independent contractor. In 
Page v. Hardy, supra, we referred to "whether or not the one 
employed is engaged in a distinct occupation or business for others." Id. 
334 P.2d at 785. There was no testimony that claimant's work for others as a 
laborer was a distinct occupation or business, or that his work for others was 
anything other than providing labor. Page was published in 1958, and 
while we do not diminish its authority, we may not disregard the more modern 
economic reality that a person may have more than one employer during a period 
of time, or may be in a employer-employee relationship and an independent 
contractor relationship with someone other than the employer, or that an 
employer may hire a person as an employee for a specific job or a 
specific time period.[18]
¶23 Claimant indicated that when he was hired off the street he took his tool 
belt with him and he was paid seven to eight dollars an hour for manual labor. 
Claimant's work was not based upon him possessing a professional or trade 
license, or that he was an artisan with a specialized skill, or that he 
possessed specialized educational skills. We decline to adopt Respondent's view 
that a person hired off the street for manual labor should be considered as an 
independent contractor with a distinct occupation or business for others if that 
person carries a tool belt and is hired for either one day or two days of manual 
labor at a construction site, and then also works for Precision and brings his 
tool belt to Precision's construction site.
¶24 Claimant testified that he was paid $15.00 per hour. Argument by 
Respondent's counsel is that the one check issued between 2006 and 2010 and 
money orders issued after the alleged injury show that claimant was paid by the 
job. Respondent's interpretation of the check and money orders was disputed by 
claimant. Claimant had an explanation for the amounts of the check and money 
orders that was consistent with employment status. Even if we assume that 
Respondent and Precision are correct and claimant was paid by the job, then this 
would be one factor we consider as part of our analysis and it would not be 
determinative as implied by Precision before the Workers' Compensation Court.[19] Precision's 
argument interpreting the method of payment is not evidence.[20]
¶25 Precision submitted no contract or memo or other writing that served as a 
direct communication of independent contractor status between Precision and 
claimant prior to any of the jobs he performed for Precision. Although claimant 
worked on jobs for Precision from 2006-2010, nothing in the record points to the 
existence of any contract or memo or other writing that served as a direct 
communication between Precision and claimant that occurred after any of the jobs 
he performed for Precision and which also show independent contractor status, 
except the one 2009 check with the handwritten notation of "Subcontract" in 
English.[21]
¶26 Generally, if the exercise of judicial power is used to adjudicate an 
issue of fact in the affirmative, then facts must be in the evidence that 
affirmatively support the decision.[22] We have said that a workers' compensation claimant 
has an initial burden of proving that an injury occurred in the course of 
employment and arose out of claimant's employment; and we noted that the burden 
of proof, by a preponderance of the evidence, shall be on the party requesting 
benefits or relief pursuant to the provisions of the Workers' Compensation Act 
unless otherwise specifically provided for by law.[23] Considering each of the factors on 
which the evidence was presented leads us to the conclusion that claimant met 
his burden to show that he was an employee of Precision.
¶27 The opinion of the Court of Civil Appeals is vacated. The order of the 
three-judge panel of the Worker's Compensation Court is vacated, and the matter 
is remanded for further proceedings consistent with this opinion.

¶28 ALL JUSTICES CONCUR.

FOOTNOTES

[1] 
Claimant's allegation of injury has not been adjudicated because his claim was 
dismissed on the jurisdictional ground that he was not an employee.

[2] 
Precision was hired by Hoover Construction Co. (Hoover), which was retained by 
DaVita, Inc., to build a dialysis center in Okmulgee, Oklahoma.

[3] 
Carlock v. Workers' Compensation Commission, 2014 OK 29, ¶ 2, 324 P.3d 408. 
See also Holley v. Ace American Ins. Co., 2013 OK 88, ¶ 8, 313 P.3d 917, 920, quoting Knott 
v. Halliburton Services, 1988 OK 
29, ¶ 4, 752 P.2d 812, 813 
("The right of an employee to compensation arises from the contractual 
relationship existing between the employee and the employer on the date of 
injury, and the statutes then in force form part of that contract and determine 
the substantive rights and obligations of the parties."); Scruggs v. 
Edwards, 2007 OK 6, ¶ 7, 154 P.3d 1257, 1261 
(same).

[4] 85 O.S.Supp.2009 § 3 (9) provides in 
part: "'Employee' means any person engaged in the employment of any person, 
firm, limited liability company or corporation covered by the terms of the 
Workers' Compensation Act, and shall include workers associating themselves 
under an agreement for the performance of a particular piece of work, in which 
event such persons so associating themselves together shall be deemed employees 
of the person having the work executed; ...."

[5] 85 
O.Supp.2009 § 3 (11): "'Employment' includes work or labor in a trade, business, 
occupation or activity carried on by an employer or any authorized voluntary or 
uncompensated worker rendering services as a firefighter, peace officer or 
emergency management worker;"

[6] 85 O.S.Supp. 2009 § 3 (8): " 
'Employer', except when otherwise expressly stated, means a person, partnership, 
association, limited liability company, corporation, and the legal 
representatives of a deceased employer, or the receiver or trustee of a person, 
partnership, association, corporation, or limited liability company, 
departments, instrumentalities and institutions of this state and divisions 
thereof, counties and divisions thereof, public trusts, boards of education and 
incorporated cities or towns and divisions thereof, employing a person included 
within the term 'employee' as herein defined,"

[7] 
See, e.g., Mastin v. Black, 1936 OK 148, 54 P.2d 399, 400 (Because claimant 
was an independent contractor and not an employee the award was vacated.); 
Producers' Lumber Co. v. Butler, 1922 OK 307, 209 P. 738, 740 (Court explained 
that a claimant was an employee of an independent contractor and not an employee 
of third party). Cf. Okla. Sess. Laws 1919, Ch. 14, p. 25 (S.B. No. 36), 
Persons Included, editorial annotation explaining the persons covered by 
the Workers' Compensation Law, and stating that "the Oklahoma Commission holds 
that an independent contractor is not included."

[8] 85 O.S.Supp.2009 § 11 (A) & 
(B)(1) state in part that: "Every employer subject to the provisions of the 
Workers' Compensation Act shall pay . . . compensation . . . [and] The 
independent contractor shall, at all times, be liable for compensation due to 
his or her direct employees ...."

[9] Our 
references to Respondent herein are to both Precision and Respondent unless 
indicated otherwise, although no appearances by counsel for "Precision" have 
been made in this proceeding. Counsel for respondent, Hoover Construction, has 
appeared herein and argued that Precision should not be considered as an 
employer. It was alleged in the trial tribunal that Precision was a 
subcontractor of Hoover. It was also alleged in the trial tribunal that 
Precision did not possess workers' compensation coverage in Oklahoma at the time 
of claimant's alleged injury.

[10] An 
opinion released for publication by order of the Court of Civil Appeals has 
persuasive effect, but is not precedential. 12 O.S.Supp.2012 Ch. 15, App. Okla. 
Sup. Ct. R. 1.200(c)(2). See also Tubbs v. State ex rel. Teachers' Retirement 
System of Oklahoma, 2002 OK 
79, n.7, 57 P.3d 571, 575; 
In the Matter of Baby Girl L., 2002 OK 9, n. 6, 51 P.3d 544, 553.

[11] 
Treat and Rivera rely upon our opinion in Bittman v. Boardman 
Co., 1977 OK 32, 560 P.2d 967, for the 
long-recognized concept that the Worker's Compensation Court may refuse to give 
credence to any portion of the evidence. However, Respondent's argument does not 
utilize the analysis this Court used in Tolbert v. Eastern Contracting, 
Inc., 1999 OK 23, 978 P.2d 358, to explain the 
difference between Bittman and Hughes v. Cole Grain Co., 1998 OK 76, 964 P.2d 206, where we reversed an 
order denying a claim because claimant's proof was not rebutted by any competent 
evidence. Tolbert, at ¶¶ 16-18, 978 P.2d at 361. Because the scope of our 
review is dependent upon the jurisdictional nature of the adjudication, 
we need not address Respondent's argument based upon the principle in 
Bittman.

[12] 
Triad Transport, Inc. v. Wynne, 2012 OK 30, ¶ 7, 276 P.3d 1013, 1016 ( "This Court 
has held continuously that a decision of the Workers' Compensation Court 
concerning a jurisdictional question is reviewed de novo."); Yzer, Inc. v. 
Rodr, 2012 OK 50, ¶ 3, 280 P.3d 323, 325 ("In workers' 
compensation cases we are not bound by the lower court's determination of 
jurisdictional facts. Whether a claimant is acting as an employee at the time of 
injury is a jurisdictional fact and the Supreme Court will review the record to 
make an independent finding on that issue.").

[13] 
Brown v. Burkett,1988 OK 
49, n.6, 755 P.2d 650, 
651.

[14] 
Duncan v. Powers Imports, 1994 
OK 126, 884 P.2d 854, 855. 
See also Garrison v. Bechtel Corp., 1995 OK 2, 889 P.2d 273, 278 (the adjudication 
whether an employer-employee relationship exists is an adjudication of a 
jurisdictional fact requiring the exercise of de novo review in this 
Court where we examine the entire record, weigh the evidence, and make 
independent fact findings without deference to the fact findings or to the legal 
rulings made by the compensation court.).

[15] 
Bouziden v. Alfalfa Elec. Co-op., Inc., 2000 OK 50, ¶ 12, 16 P.3d 450, 455.

[16] 
Swafford v. Sherwin Williams, 1993 OK 141, 863 P.2d 1215, 1217.

[17] 
Mills v. R.T. "Bob" Nelson's Painting Service, 1966 OK 262, 421 P.2d 849 (Respondent did not 
control or supervise claimant, respondent was furnished estimates of job 
progress by claimant, respondent paid money to claimant that he paid his 
workers, and no deductions were made from the money paid by respondent to 
claimant.).

[18] 
See, e.g., Cattlemen's Steakhouse, Inc. v. Waldenville, 2013 OK 95, 318 P.3d 1105 (person 
working as a security guard who was also a Deputy Sheriff).

[19] 
While we consider the method of payment when determining employment status, we 
have also long recognized that payment by the job is not a determinative 
factor of a person's employment status. See, e.g., Drumright 
Gas Engine Co. v. Sherrill, 1935 
OK 454, 46 P.2d 921, 924, 
quoting Chicago, R. I. & R. R. Co. v. Bennett, 1912 OK 592, 128 P. 705, 706, 20 A. L. R. 678 
("But the mode of payment is not a decisive test by which to determine this 
question. The test lies in the question whether the contract reserves to the 
proprietor the power of control over the employee. That the mere fact that the 
work being performed by an employee at the time he was injured was done by the 
piece or job, as by payment of a stated price for each car when loaded, does not 
deprive him of the character of an employee, where he was a mere servant 
carrying out the employer's will and instructions.").

[20] 
Generally, argument of counsel is not a form of evidence. In re Guardianship 
of Stanfield, 2012 OK 8, n. 
55, 276 P.3d 989, 1002 (unsworn 
statements by counsel do not constitute evidence); Willis v. Sequoyah House, 
Inc., 2008 OK 87, ¶¶ 12-13, 
194 P.3d 1285, 1289-1290 
(same).

[21] For 
example, independent contractors and their customers often, but not always, 
communicate with each other, and this communication may show the nature of the 
relationship. See, e.g., Swyden Const. Co. v. White, 1963 OK 162, 383 P.2d 674 (an independent 
contractor may bill his or her client); Mills v. R.T. "Bob" Nelson's Painting 
Service, 1966 OK 262, 421 P.2d 849 (an independent 
contractor may furnish to a customer estimates of progress in the work due to 
the lack of direct supervision and control of the work).

[22] 
Christian v. Gray, 2003 OK, 10, ¶ 44, 65 P.3d 591, 609. Of course, an 
adjudication of an issue of fact in the negative may be based upon an entire 
absence of proof, or a failure to prove one or more required elements necessary 
to establish a fact. See, e.g., State v. Price, 2012 OK 51, ¶ 33, 280 P.3d 943, 953 (a demurrer to 
the plaintiff's evidence should be sustained only when there is an entire 
absence of proof); Silk v. Phillips Petroleum Co., 1988 OK 93, 760 P.2d 174, 180 (absence of one 
element of fraud will defeat fraud claim).

[23] 
Davis v. Southwestern Bell Telephone, 2006 OK 48, ¶ 15, & n.7, 139 P.3d 892, 896, citing 85 O.S. Supp.2005 § 1.1(B). See 
also Swyden Const. Co. v. White, 1963 OK 162, 383 P.2d 674, 675 (The existence of 
an employee-employer relationship constitutes a primary prerequisite to an 
award, and claimant has the burden to establish the status of an employee in 
relation to the person against whom a claim is asserted.).
 




 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1993 OK CIV APP 89, 854 P.2d 393, 64 OBJ 1944, Treat v. McDonald's
Discussed 1999 OK CIV APP 22, 977 P.2d 366, 70 OBJ 1244, Rivera v. Wal-Mart Stores, Inc.
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1988 OK 29, 752 P.2d 812, 59 OBJ 861, Knott v. Halliburton Services
Discussed 1988 OK 49, 755 P.2d 650, Brown v. Burkett
Discussed 1988 OK 93, 760 P.2d 174, 59 OBJ 1688, Silk v. Phillips Petroleum Co.
Discussed 1993 OK 141, 863 P.2d 1215, 64 OBJ 3366, Swafford v. Sherwin Williams
Discussed 1994 OK 126, 884 P.2d 854, 65 OBJ 3839, Duncan v. Powers Imports
Discussed 1936 OK 148, 54 P.2d 399, 176 Okla. 46, MASTIN v. BLACK
Discussed 1935 OK 454, 46 P.2d 921, 173 Okla. 147, DRUMRIGHT GAS ENGINE CO. v. SHERRILL
Discussed 1958 OK 283, 334 P.2d 782, PAGE v. HARDY
Discussed at Length 1922 OK 307, 209 P. 738, 87 Okla. 172, PRODUCERS' LUMBER CO. v. BUTLER
Discussed 1963 OK 162, 383 P.2d 674, SWYDEN CONSTRUCTION COMPANY v. WHITE
Discussed at Length 2002 OK 9, 51 P.3d 544, 73 OBJ 546, IN THE MATTER OF BABY GIRL L.
Discussed 1966 OK 262, 421 P.2d 849, MILLS v. R.T. BOB NELSON'S PAINTING SERVICE
Discussed at Length 1995 OK 2, 889 P.2d 273, 66 OBJ 355, Garrison v. Bechtel Corp.
Discussed 2002 OK 79, 57 P.3d 571, TUBBS v. STATE OF OKLAHOMA, EX REL. TEACHERS' RETIREMENT SYSTEM
Discussed 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Cited 2006 OK 48, 139 P.3d 892, DAVIS v. SOUTHWESTERN BELL TELEPHONE
Discussed 2007 OK 6, 154 P.3d 1257, SCRUGGS v. EDWARDS
Discussed 2008 OK 87, 194 P.3d 1285, WILLIS v. SEQUOYAH HOUSE, INC.
Discussed 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed 2012 OK 30, 276 P.3d 1013, TRIAD TRANSPORT INC. v. WYNNE
Discussed 2012 OK 50, 280 P.3d 323, YZER, INC. v. RODR
Discussed 2012 OK 51, 280 P.3d 943, STATE v. PRICE
Discussed 2013 OK 88, 313 P.3d 917, HOLLEY v. ACE AMERICAN INSURANCE COMPANY
Discussed 2013 OK 95, 318 P.3d 1105, CATTLEMEN'S STEAKHOUSE, INC. v. WALDENVILLE
Cited 2014 OK 29, 324 P.3d 408, CARLOCK v. WORKERS' COMPENSATION COMMISSION
Cited 1977 OK 32, 560 P.2d 967, BITTMAN v. BOARDMAN CO.
Discussed 1998 OK 76, 964 P.2d 206, 69 OBJ 2623, Hughes v. Cole Grain Company
Discussed 1999 OK 23, 978 P.2d 358, 70 OBJ 1007, Tolbert v. Eastern Contracting, Inc.
Discussed 2000 OK 50, 16 P.3d 450, 71 OBJ 1753, BOUZIDEN v. ALFALFA ELECTRIC COOPERATIVE, INC.
Discussed 1912 OK 592, 128 P. 705, 36 Okla. 358, CHICAGO R. I. & P. RY. CO. v. BENNETT
Discussed
Title 85. Workers' Compensation Cite
Name
Level 85 O.S. 1.1, Repealed by Laws 2011, SB 878, c. 318, § 87
Cited 85 O.S. 3, Repealed by Laws 2011, SB 878, c. 318, § 87
Discussed 85 O.S. 11, Repealed by Laws 2011, SB 878, c. 318, § 87
Discussed